**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:
Adam Hendry, Case No. 25-14711-PDR

Debtor. Chapter 11

_______________________________________/

# DEBTOR'S PLAN OF REORGANIZATION

**December 9, 2025**

**BEIGHLEY, MYRICK,**
**UDELL & ZEICHMAN, PA**
2385 Executive Center Drive, Suite 300
Boca Raton, FL 33431
Phone: 561-549-9036
Fax: 561-491-5091
tzeichman@bmulaw.com
THOMAS G. ZEICHMAN
Florida Bar No. 99239

**ATTORNEYS FOR DEBTOR**

## TABLE OF CONTENTS

**ARTICLE I** ........ **1**
**DEFINITIONS** ........ 1
**ARTICLE II** ........ **12**
**BACKGROUND OF DEBTOR AND** ........ **12**
**COMMENCEMENT OF THIS CHAPTER 11 CASE** ........ **12**
**2.01. Background of Debtor** ........ 12
**2.02. Retained Professionals** ........ 12
**ARTICLE III** ........ **18**
**TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE** ........ **18**
**CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE'S FEES** ........ **18**
**3.01. Allowed Administrative Claims.** ........ 18
**3.02. Priority Tax Claims** ........ 19
**3.03. U.S. Trustee's Fees.** ........ 19
**ARTICLE IV** ........ **19**
**CLASSIFICATION OF CLAIMS** ........ **19**
**ARTICLE V** ........ **21**
**TREATMENT OF CLASSIFIED CLAIMS** ........ **21**
**5.01. Class 1. Allowed BankWest, Inc. Secured Claims** ........ 21
**5.02. Class 2. Allowed Arguelles Secured Claim** ........ 22
**5.03. Class 3. Fannie Mae Secured Claim** ........ 23
**5.04. Class 4. Allowed Citibank N.A. Secured Claim** ........ 24
**5.05. Class 5. Allowed Wilmington Savings Fund, FSB Secured Claim 17-2** ........ 25
**5.06. Class 6. Allowed Wilmington Savings Fund, FSB Secured Claim 18** ........ 27
**5.07. Class 7. U.S. Bank National Association Secured Claim 21** ........ 28
**5.08. Class 8. Allowed Wilmington Savings Fund, FSB Secured Claim 23** ........ 30
**5.09. Class 9. Allowed Wilmington Savings Fund, FSB Secured Claim 24-2** ........ 30
**5.10. Class 10. Allowed Metropolitan Tower Life Secured Claim 25** ........ 32

**5.11. Class 11. Allowed Wilmington Savings Fund, FSB Secured Claim 28-2** ........ 34
(c) Impairment. The Class 11 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Shadow Pines Secured Claim is entitled to vote to accept or reject the Plan. ........ 35
**5.12. Class 12. Allowed Wilmington Savings Fund, FSB Secured Claim 31** ........ 35
(c) Impairment. The Class 12 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Oak Cottage Secured Claim is entitled to vote to accept or reject the Plan. ........ 37
**5.13. Class 13. Allowed Wilmington Savings Fund, FSB Secured Claim 36** ........ 37
(c) Impairment. The Class 13 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Sagewood Secured Claim is entitled to vote to accept or reject the Plan. ........ 39
**5.14. Class 14. Allowed J.P. Morgan Mortgage Trust Secured Claim 37** ........ 39
(c) Impairment. The Class 14 Claim is Impaired. Accordingly, the holder of the Allowed J.P. Morgan Secured Claim is entitled to vote to accept or reject the Plan. ........ 40
**5.15. Class 15. Allowed Wilmington Savings Fund, FSB Secured Claim 38** ........ 40
(c) Impairment. The Class 15 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Wellington Secured Claim is entitled to vote to accept or reject the Plan. ........ 42
**5.16. Class 16. Allowed Wilmington Savings Fund, FSB Secured Claim 40** ........ 42

5.17. Claim No. 17. Allowed Citibank, N.A. POC 42 Claim. .......... 44
5.18. Class 18. Allowed AmeriCedit Secured Claim .......... 45
5.19. Class 19. Allowed Honda Secured Claim .......... 46
5.20. Class 20. Allowed Truist Secured Claim .......... 46
5.21. Class 21. Allowed Valley National Bank Homestead Claim .......... 46
5.22. Class 22. Allowed Secured Claim of Valley National Bank Melbourne .......... 47
5.23. Class 23. Allowed Secured Claim of Greystone .......... 48
5.24. Class 24. Allowed FIB Mountain Claim .......... 48
5.25. Class 25. Allowed FIB Oxford Claim. .......... 50
5.26. Class 26. Allowed FIB Horizon Claim. .......... 52
5.27. Class 27. Allowed DW Villard Claim. .......... 53
5.28. Class 28. Allowed DW Energy Portfolio Claim. .......... 55
5.29. Class 29. Allowed FB&T South Cliff Claim. .......... 56
5.30. Class 30. Allowed FIB Dakota Flats Claim. .......... 58
5.31. Class 31. Allowed FIB Terry Peak Claim. .......... 60
5.32. Class 32. Allowed BW Rushmore Claim. .......... 61
5.33. Class 33. Allowed Caledonia Claim. .......... 63
5.34. Class 34. Allowed SF Brookview Claim. .......... 64
5.35. Class 35. Allowed Ridge View Claim. .......... 66
5.36. Class 36. Allowed SPS Teton Claim. .......... 68
5.37. Class 37. Allowed SF Larkspur Claim. .......... 69
5.38. Class 38. Allowed Unsecured Priority Claims .......... 71
5.39. Class 39. Allowed General Unsecured Claims .......... 71
5.40. Class 40. Allowed Equity Interest/Revesting of Personal Property in Reorganized Debtor .......... 72
ARTICLE VI PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS .......... 72
6.01. Solicitation of Votes .......... 72
6.02. Voting of Claims .......... 73
6.03. Method of Distribution Under the Plan .......... 73
6.04. Distributions Withheld for Disputed Claims .......... 74
(a) Establishment and Maintenance of Reserve .......... 74
(b) Property Held in Disputed Claims Reserve .......... 74
(c) Distributions Upon Allowance of Disputed Claims .......... 74
(e) Expenses of Disputed Claims Reserve .......... 75
6.05. Procedures for Allowance or Disallowance of Disputed Claims .......... 75
(a) Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims .......... 75
(b) No Distribution Pending Allowance .......... 75
(c) Disallowed Claims .......... 76
6.06. Disbursing Agent .......... 76
6.07. Setoffs and Recoupment .......... 76
6.08. Estimations of Claims .......... 76
6.09. No Recourse .......... 77

**6.10. Amendments to Claims** ........ 77
**6.11. Post-Petition Interest on Claims** ........ 77
**6.12. Unclaimed Funds** ........ 77
**ARTICLE VII** ........ **78**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........ **78**
**7.01. Assumption or Rejection of Executory Contracts and Unexpired Leases** ........ 78
**7.02. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan** ........ 78
**ARTICLE VIII** ........ **78**
**MEANS FOR IMPLEMENTATION** ........ **78**
**8.01. General** ........ 78
**8.02. The Reorganized Debtor** ........ 79
**8.03. Effectiveness of Instruments and Agreements** ........ 79
**8.04. Approval of Agreements** ........ 79
**8.05. Administration After the Effective Date** ........ 79
**8.06. Term of Bankruptcy Injunction or Stays** ........ 79
**8.07. Revesting of Assets** ........ 79
**8.08. Causes of Action** ........ 80
**9.01. Conditions Precedent to Confirmation** ........ 80
**9.02. Effect of Failure of Conditions** ........ 81
**9.03. Waiver of Conditions** ........ 81
**ARTICLE X** 81
**EFFECT OF CONFIRMATION** ........ 81
**10.01. Binding Effect Notices** ........ 81
**10.02 Discharge of Debtor** ........ 81
**10.03 Injunction Related to Discharge** ........ 82
**10.05 Injunction Against Interference with the Plan** ........ 82
**10.06 Votes Solicited in Good Faith** ........ 83
**ARTICLE XI** ........ **83**
**RETENTION OF JURISDICTION** ........ **83**
**ARTICLE XII MISCELLANEOUS PROVISIONS** ........ **84**
**11.01. Effectuating Documents and Further Transactions.** ........ 84
**11.02. Exemption from Transfer Taxes.** ........ 85
**11.03. Authorization to Request Prompt Tax Determinations.** ........ 85
**11.04. Exculpation.** ........ 85
**11.05. Injunction Relating to Exculpation** ........ 85
**11.06. Post-Effective Date Fees and Expenses** ........ 85
**11.07. Payment of Statutory Fees** ........ 86
**11.08. Amendment or Modification of Plan** ........ 86
**11.09. Severability** ........ 86
**11.10. Revocation or Withdrawal of the Plan** ........ 87
**11.11. Binding Effect** ........ 87
**11.12. Notices** ........ 87
**11.13. Governing Law** ........ 87
**11.14. Withholding and Reporting Requirements** ........ 87
**11.15. Filing of Additional Documents** ........ 88

**11.16. No Admissions** ........ 88
**11.17. Waiver of Bankruptcy Rule 3020(e) and 7062** ........ 88
**11.18. Time** 88
**11.19. Substantial Consummation** ........ 88
**11.20. Inconsistency** ........ 88
**11.21. No Interest or Attorneys' Fees** ........ 88
**11.22. Successors and Assigns** ........ 88
**11.23. Headings** ........ 89
**11.24. No Penalty for Prepayment** ........ 89
**11.25. Savings Clause** ........ 89
**11.26. Remedy of Defects** ........ 89

**DEBTOR'S PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Adam Hendry (the "Debtor") proposes the following plan of reorganization under section 1121(a) of the Code:

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

***"Actions"*** shall mean (except as expressly provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or agreement entered into in connection with the Plan) all actions that a bankruptcy trustee or debtor-in-possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person, and all claims, third-party claims, counterclaims, cross-claims, setoff, offset, or other defenses, all choate and inchoate actions, rights of action, causes of action, causes in action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, whether fixed, contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or unasserted, known or unknown, direct or indirect, derivative, or otherwise, and the proceeds thereof, of, or belonging to, the Debtor or the Estate, that are or may be pending on the Effective Date, or instituted by the Reorganized Debtor after the Effective Date, against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code or any applicable state law, whether asserted, commenced, or filed in the Bankruptcy Court, or any other court or tribunal.

"***Administrative Claim"*** shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

"***Administrative Claimant"*** shall mean the holder of an Administrative Claim.

***"Allowed"*** is used herein to describe any Claim or Equity Interest that is an Allowed Claim or an Allowed Equity Interest.

"***Allowed Amount"*** shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the

Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

***"Allowed Claim"*** shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

***"Arguelles Secured Claims"*** shall mean Alejandro Arguelles and Gatoralex Consulting, LLC.

***"Article"*** shall mean one of the numbered Articles of the Plan.

***"Assets"*** shall mean any and all property of the Estate as defined under and included in Section 541(a) of the Code, including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, cash, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of actions, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

***"Auction"*** shall mean the auction of the Cheyenne River Ranch Property and the separate auction of the SD Single Family Homes. The Auction shall be conducted by the Auctioneer.

***"Auctioneer"*** shall mean the Debtor, its counsel, or such Person(s) as the Debtor may designate with approval of the Court, to act as the auctioneer at the Auction.

***"Avoidance Actions"*** shall mean any and all Actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

"***Back-Up Bid***" means the bid deemed by the Auctioneer to be the second highest and best offer to purchase the Cheyenne River Ranch Property and the separate auction of the SD Single Family Homes.

"***Back-Up Bidder***" means the Qualified Bidder that makes the Back-Up Bid.

***"Ballot"*** shall mean the ballot upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate

their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

***"Ballot Deadline"*** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

"***Bid Deadline***" means the date three business days prior to the date of the Auction.

***"BMUZ"*** shall mean Beighley, Myrick, Udell & Zeichman.

**"*Business Day"*** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in West Palm Beach, Florida are authorized or required to close.

**"*Case"*** shall mean the above-referenced chapter 11 Case, pending before the United States Bankruptcy Court for the Southern District of Florida.

**"*Cash"*** shall mean legal tender of the United States of America.

**"*Claim"*** shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

***"Claims Bar Date"*** shall mean the last date set by the Court for creditors, other than a governmental unit, and holders of Equity Interests to file Proofs of Claim or Equity Interest in the Case.

**"*Class"*** shall mean a group of Claims classified together pursuant to Article V of the Plan.

***"Class 1"*** shall mean the Allowed BankWest, Inc. Secured Claims, as described, classified and treated in Section 5.01 of the Plan.

***"Class 2"*** shall mean the Allowed Arguelles Secured Claim, as described, classified and treated in Section 5.02 of the Plan.

***"Class 3"*** shall mean the Allowed Frannie Mae Secured Claim, as described, classified, and treated in Section 5.03 of the Plan.

***"Class 4"*** shall mean the Allowed Citibank N.A. Secured Claim, as described, classified and treated in Section 5.04 of the Plan.

***"Class 5"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 17-2, as described, classified, and treated in Section 5.05 of the Plan.

***"Class 6"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 18, as described, classified, and treated in Section 5.06 of the Plan.

***"Class 7"*** shall mean the Allowed Bank National Association Secured Claim 21, as described, classified, and treated in Section 5.07 of the Plan.

***"Class 8"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 23, as described, classified, and treated in Section 5.08 of the Plan.

***"Class 9"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 24-2, as described, classified and treated in Section 5.09 of the Plan.

***"Class 10"*** shall mean the Allowed Metropolitan Secured Claim 25, as described, classified and treated in Section 5.10 of the Plan.

***"Class 11"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 28-2, as described, classified and treated in Section 5.11 of the Plan.

***"Class 12"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 31, as described, classified and treated in Section 5.12 of the Plan.

***"Class 13"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 36, as described, classified and treated in Section 5.13 of the Plan.

***"Class 14"*** shall mean the Allowed J.P. Morgan Mortgage Trust Secured Claim 37, as described, classified and treated in Section 5.14 of the Plan.

***"Class 15"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 38, as described, classified and treated in Section 5.15 of the Plan.

***"Class 16"*** shall mean the Allowed Wilmington Savings Fund, FSB Secured Claim 40, as described, classified and treated in Section 5.16 of the Plan.

***"Class 17"*** shall mean the Allowed Citibank, N.A. POC 42 Claim, as described, classified and treated in Section 5.17 of the Plan.

***"Class 18"*** shall mean the Allowed AmeriCredit Secured Claim, as described, classified and treated in Section 5.18 of the Plan.

***"Class 19"*** shall mean the Allowed Honda Secured Claim, as described, classified and treated in Section 5.19 of the Plan.

***"Class 20"*** shall mean the Allowed Truist Secured Claim, as described, classified and treated in Section 5.20 of the Plan.

***"Class 21"*** shall mean the Allowed Valley National Bank Homestead Claim, as described, classified and treated in Section 5.21 of the Plan.

***"Class 22"*** shall mean the Allowed Secured Claim of Valley National Bank Melbourne, as described, classified and treated in Section 5.22 of the Plan.

***"Class 23"*** shall mean the Allowed Secured Claim of Greystone, as described, classified and treated in Section 5.23 of the Plan.

***"Class 24"*** shall mean the Allowed FIB Mountain Claim, as described, classified and treated in Section 5.24 of the Plan.

***"Class 25"*** shall mean the Allowed FIB Oxford Claim, as described, classified and treated in Section 5.25 of the Plan.

***"Class 26"*** shall mean the Allowed FIB Horizon Claim, as described, classified and treated in Section 5.26 of the Plan.

***"Class 27"*** shall mean the Allowed DW Villard Claim, as described, classified and treated in Section 5.27 of the Plan.

***"Class 28"*** shall mean the Allowed DW Energy Portfolio Claim, as described, classified and treated in Section 5.28 of the Plan.

***"Class 29"*** shall mean the Allowed FB&T South Cliff Claim, as described, classified and treated in Section 5.29 of the Plan.

***"Class 30"*** shall mean the Allowed FIB Dakota Flats Claim, as described, classified and treated in Section 5.30 of the Plan.

***"Class 31"*** shall mean the Allowed FIB Terry Peak Claim, as described, classified and treated in Section 5.31 of the Plan.

***"Class 32"*** shall mean the Allowed BW Rushmore Claim, as described, classified and treated in Section 5.32 of the Plan.

***"Class 33"*** shall mean the Allowed Caledonia Claim, as described, classified and treated in Section 5.33 of the Plan.

***"Class 34"*** shall mean the Allowed SF Brookview Claim, as described, classified and treated in Section 5.34 of the Plan.

***"Class 35"*** shall mean the Allowed Ridge View Claim, as described, classified and treated in Section 5.35 of the Plan.

***"Class 36"*** shall mean the Allowed SPS Teton Claim, as described, classified and treated in Section 5.36 of the Plan.

***"Class 37"*** shall mean the Allowed SF Larkspur Claim, as described, classified and treated in Section 5.37 of the Plan.

***"Class 38"*** shall mean the Allowed Unsecured Priority Claims, as described, classified and treated in Section 5.38 of the Plan.

***"Class 39"*** shall mean the Allowed General Unsecured Claims, as described, classified and treated in Section 5.39 of the Plan.

***"Class 40"*** shall mean the Allowed Equity Interest/Revesting of Personal Property in Reorganized Debtor, as described, classified and treated in Section 5.40 of the Plan.

**"*Code"*** shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq*.

***"Collateral"*** shall mean any property or interest in Property of the Estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

**"*Confirmation"*** shall mean the entry by the Court of the Confirmation Order.

**"*Confirmation Date"*** shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

**"*Confirmation Hearing"*** shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

**"*Confirmation Order"*** shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Debtor desires and shall otherwise be in a form and substance satisfactory to the Debtor.

**"*Court"*** shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

**"*Creditor"*** shall mean any Person holding a Claim, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

**"*Debtor or Debtor-in-Possession"*** shall mean Adam Hendry. Any reference to the "Debtor" shall also include the Debtor in his capacity as debtor-in-possession in this Case, and vice-versa.

"***Deposit***" shall mean a deposit of one hundred thousand dollars ($100,000.00) payable by cashier's check or wire transfer into the non-interest-bearing escrow account of SLP as part of a Qualifying Bid Packet.

***"DIP Account"*** shall mean the debtor-in-possession account held by the Debtor on the Effective Date.

***"Disbursing Agent"*** shall mean Adam Hendry.

**"*Disputed Amount"*** shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

***"Disputed Claim"*** shall mean any Disputed Claim, which may include a Secured Claim and General Unsecured Claim, disputed by the Debtor, for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan. Distributions withheld for Disputed Claims are described in Article VI of the Plan.

***"Disputed Claims Reserve"*** is defined in section 6.04 of the Plan.

**"*Distribution"*** shall mean funds to be paid to holders of Claims pursuant to Article III, Article IV, Article V, Article VI, and Article VIII of the Plan.

**"*Distribution Date"*** shall mean the dates upon which Distributions may be made pursuant to Article VI of the Plan.

**"*Docket"*** shall mean the docket maintained in this Case by the Clerk of the Court.

**"*Effective Date"*** shall be described in the Confirmation Order and shall be the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 9.01 of the Plan occurs.

***"Entity"*** shall have the meaning set forth in section 101(15) of the Bankruptcy Code and includes, without limitation, any Person, estate, trust, or governmental unit, and the United States trustee.

**"*Estate"*** shall mean the estate that was created by the commencement of the Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges and Causes of Action of the Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or the Estate shall have had as of the Petition Date, or which the Debtor or the Estate acquired after the commencement of the Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

***"Excess Proceeds"*** shall have the meaning ascribed to such term in Section 5.04(b)(3) of the Plan.

***"Executory Contract"*** shall mean a contract or unexpired lease to which any of the Debtor is a party and that is executory within the meaning of section 365 of the Code.

***"Face Amount"*** shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

***"Fee Request"*** shall mean an application or request for payment by the Estate of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

***"Final Order"*** shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Debtor, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Debtor may waive such requirement in accordance with the Plan.

***"Forfeited Back-Up Bidder Deposit"*** shall have the meaning ascribed to it in Section 2.04 of the Plan.

***"Forfeited Deposits"*** shall have the meaning ascribed to it in Section 5.04 of the Plan.

***"Forfeited Successful Bidder Deposit"*** shall have the meaning ascribed to it in Section 2.04 of the Plan.

***"Gap Payment Amount"*** shall have the meaning ascribed to it in Section 5.04(b)(1) of the Plan.

***"General Unsecured Claim"*** shall have the same meaning as Unsecured Claim.

***"Governmental Claims Bar Date"*** shall mean a date established by the Court that shall be the last date for a governmental unit to file Proofs of Claim in the Case.

***"Impaired"*** shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Code.

***"Insider(s)"*** shall mean those Persons defined in section 101(31)(B) of the Code.

***"Late Filed Claim"*** shall mean a Claim filed after the applicable claims bar date.

***"Lien"*** shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

***"Person"*** shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

***"Petition Date"*** shall mean April 28, 2025, the date on which the Debtor commenced this Case by filing a voluntary petition under chapter 11 of the Code.

***"Plan"*** shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

***"Plan Documents"*** shall mean the documents to be filed as a part of the Plan Supplement.

***"Plan Supplement"*** shall mean the list of Actions which may be identified and otherwise filed with the Clerk of the Court on or before fourteen (14) days prior to the commencement of the Confirmation Hearing.

***"Post-Petition"*** means a date on or after the Petition Date.

***"Post-Petition Interest"*** shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

***"Pre-Petition"*** shall mean a date prior to the Petition Date.

***"Priority Tax Claim"*** shall mean a Claim (other than an Administrative Claim and Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

***"Pro Rata"*** shall mean proportionately, so that the ratio of the amount of consideration distributed to on account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that

Class, unless otherwise defined in the Plan. Unless otherwise provided in the Plan, whenever a Disputed General Unsecured Claim has not been finally resolved, an appropriate reserve for payment of such Disputed General Unsecured Claim shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed General Unsecured Claim upon final resolution of the dispute.

***"Professional"*** shall mean any professional employed in the Case pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

***"Professional Fee Claim"*** means a Claim for compensation or reimbursement of expenses of a Professional retained in the Case in accordance with the provisions of Section 327 and 328 of the Bankruptcy Code.

***"Property of the Estate"*** shall mean the property defined in section 541 of the Code.

***"Proponent"*** shall mean the Debtor.

***"Purchase Price"*** shall mean the dollar amount of the Successful Bid or Back-Up Bid, as applicable, pursuant to which the Sale closes.

"***Qualified Bid***" means a bid for the Cheyenne River Ranch Property or SD Single Family Home made by a Qualified Bidder.

"***Qualified Bid Summary***" means fully executed copies of the Qualified Bids to be considered at the Auction that the Debtor shall file and serve upon interested parties no later than two business days prior to the Auction.

"***Qualified Bidder***" means a person or entity deemed by the Debtor to have submitted a Qualifying Bid Packet.

"***Qualifying Bid Packet***" means the documents identified in Section 2.04 of the Plan that a potential bidder must submit to the Debtor on or before the Bid Deadline to participate in the Auction as a Qualified Bidder.

***"Released Parties"*** shall mean the Debtor and each of his respective current and former agents, counsel, financial advisors, and professionals.

***"Rejected Contract"*** shall mean an Executory Contract that is rejected at any time during this Case or pursuant to Article VII of the Plan.

***"Rejection Claim"*** shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

***"Reorganized Debtor"*** shall mean the Debtor, as reorganized, on or after the Effective Date.

***"Rules"*** shall mean the Federal Rules of Bankruptcy Procedure.

***"Sale"*** shall mean the sale of the Cheyenne River Ranch Property or SD Single Family Home as described in Section 2.04 of the Plan.

***"Schedules"*** shall mean the Schedules of assets and liabilities originally filed by the Debtor with the Court as the same may be amended from time to time.

***"Section"*** shall mean a numbered subsection of any Article of the Plan.

***"Secured Claim"*** shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

***"Secured Creditor"*** shall mean the holder of a Secured Claim.

***"Secured Taxing Authority Claims"*** shall mean ad valorem taxes assessed against the Debtor's real property, if any, in the ordinary course of business.

***"Substantial Consummation"*** shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

***"Unimpaired"*** shall mean an Allowed Claim that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

***"Unsecured Claim"*** shall mean a Claim other than a Secured Claim, a Priority Tax Claim, or an Administrative Claim.

***"Unsecured Creditor"*** shall mean the holder of an Unsecured Claim.

***"U.S. Trustee's Fees"*** shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

***"Rules of Construction and Interpretation"***

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

## BACKGROUND OF DEBTOR AND COMMENCEMENT OF THIS CHAPTER 11 CASE

### 2.01. Background of Debtor

The Debtor is an individual who owns entities which manage and own properties throughout the United States including several multi-family properties. After a series of disputes with certain lenders and an arbitration with a former business colleague, the Debtor's entities were allegedly in default of loans, including certain which were personally guaranteed by the Debtor.

### 2.02. Retained Professionals

The Debtor has sought the Court's authorization to retain certain professionals in connection with the Case. Specifically, the Debtor has sought and obtained the Court's approval to retain and employ Beighley, Myrick, Udell & Zeichman, P.A. as the Debtor's general bankruptcy counsel [ECF Nos. 34 and 97] and Newpoint Advisors Corporation ("NPC") as the Debtor's financial advisor [ECF Nos. 155 and 176]. The Debtor may seek to employ additional professionals in connection with the Case.

### 2.03. The Corporate Debtors' Bankruptcy and Plan

The Debtor directly or indirectly owns interests in Tzadik Sioux Falls Portfolio I, LLC ("TSF Portfolio I"), TMG2, LLC ("TMG"), Garden Villas Apartments, LLC ("Garden Villas"), Tzadik Hidden Hills Apartments, LLC ("Hidden Hills"), Tzadik Rapid City Portfolio I, LLC ("Rapid City"), Tzadik Sioux Falls I, LLC ("TSF I"), Tzadik Sioux Falls Portfolio III, LLC ("TSF Portfolio III"), and Tzadik Taylor's Place, LLC ("Taylor's Place", and together with TSF Portfolio I, TMG, Garden Villas, Hidden Hills, Rapid City, TSF I, and TSF Portfolio III, the "Corporate Debtors") has bankruptcy cases pending before the Southern District of Florida.

The Corporate Debtors have filed a plan in their jointly administered case no. 25-13865-PDR. [Jointly Administered Dkt. No. 393] (including any amendments, the "Corporate Debtors' Plan"). Among other things, the Corporate Debtors' Plan, proposes to satisfy the debts of Fannie Mae and Merchants Bank of Indiana ("Merchants") in full. Fannie Mae filed two proof of claims [Claim No. 15] for $30,610,578.83 and [Claim No. 16] $47,887,036.73 which if allowed would be classified as Class 39 General Unsecured Creditors. Merchants filed a proof of claim at [Claim No. 29] in the amount of $97,554,003.06 which if allowed would be classified as Class 39 General Unsecured Creditors. The Corporate Debtors' Plan proposes to satisfy both Fannie Mae and Merchants allowed claims in full. The distributions that Mr. Hendry will receive from the Corporate Debtor's Plan will be used to pay the Priority Claims and the Class 39 General Unsecured Creditors Claims. Additionally, Alejandro Arguelles and Gatoralex Consulting, LLC

are creditors of many of the Corporate Debtors and may receive payments directly from the Corporate Debtors' Plan which will reduce the amount of the Arguelle's Secured Claim.

### 2.04. Liquidation of Part of the Cheyenne River Ranch Property and SD Single Family Homes via Private Sale or Auction and Sale of Same

(a) ***Refinance or Private Sale of Cheyenne River Ranch, LLC Property and The SD Single Family Properties.***

(i) ***The Cheyenne River Ranch, LLC Property***

The Cheyenne River Ranch, LLC Property is currently listed and marketed for sale. The Debtor anticipates selling a portion of the Cheyenne River Ranch, LLC Property via a private sale in a timely manner. Accordingly, the Debtor proposes the following mechanism to sell portions of the Cheyenne River Ranch, LLC Property and satisfy the Allowed Class 1 and Class 2 Claims, to the extent the Class 2 Claim is not satisfied by the Corporate Debtors' Plan.

The Debtor shall have ***six (6) months*** following the Effective Date of the Plan to obtain a binding contract for the sale of the Cheyenne River Ranch, LLC Property or any part thereto or a cash out refinance in an amount to satisfy the Class 1 and Class 2 claims. The Debtor anticipates that liquidation of the Cheyenne River Ranch, LLC Property or a portion thereof or a cash out refinance will satisfy the Allowed Class 1 and Class 2 Claims in full. To the extent that the Debtor obtains a binding contract for sale of the Cheyenne River Ranch, LLC Property via a private transaction or a cash out refinance, the purchase price or loan amount which is in an amount sufficient to satisfy the Allowed Class 1 and Class 2 Claims in full, the holders of the Allowed Class 1 and Class 2 Claims, as applicable, shall, in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Claims, be paid from the private sale or refinance proceeds upon closing. However, to the extent that the Allowed Class 1 and Class 2 Claims are not satisfied in full from the private transaction or refinance, the holders of Allowed Class 1 Claim, as applicable, shall be entitled to a deficiency claim, which shall be treated as an Allowed General Unsecured Claim in Class 39 of the Plan. Class 2 claims will retain their lien rights set forth in Class 2 if not paid in full by the private sale or refinance. In the event the Debtor is able to pay the Class 1 and Class 2 Claims in full prior to ***six (6) months*** following the Effective Date of the Plan, then the Debtor is not required to sell the Cheyenne River Ranch, LLC Property.

(ii) ***The SD Single Family Homes***

The following entities are owned by the Debtor which in turn owns the single family real estate.

| **Debtor owned entity** | **Address** | | | **Lender**[1] | **SD SFH Estimated Value** |
|---|---|---|---|---|---|

[1] Please refer to the class section to see the full name of the current servicer/lender.

| | | | | | |
|---|---|---|---|---|---|
| Caledonia Place, LLC | 744 Prospect Ave, Unit 107 | Lead | SD | NA | $187,500 |
| Brookview Place, LLC | 13278 Klondike Road | Rapid City | SD | Selene Finance | $1,250,000 |
| Ridge View Estates, LLC | 617 Ridge Road | Lead | SD | NA | $437,500 |
| Teton Cabin, LLC | 25110 Little Teton Road | Custer | SD | Select Portfolio Service | $689,000 |
| Larkspur Hills, LLC | 20768 Larkspur Road | Sturgis | SD | Selene Finance | $1,193,182 |
| Charmwood House, LLC | 4710 Charmwood | Rapid City | SD | Shellpoint Mortgage | $460,000 |
| Sagewood Place, LLC | 1023 Sagewood | Rapid City | SD | Shellpoint Mortgage | $495,000 |
| Wellington Place, LLC | 6508 Wellington | Rapid City | SD | Shellpoint Mortgage | $517,500 |
| Oakland Place, LLC | 1023 E Oakland | Rapid City | SD | Shellpoint Mortgage | $390,000 |
| Shadow Pines, LLC | 4811 Cliff Dr | Lead | SD | Select Portfolio Service | $1,135,000 |
| Oak Cottage, LLC | 51 2nd St | Lead | SD | Shellpoint Mortgage | $535,000 |
| Fulton House, LLC | 912 Fulton St | Rapid City | SD | Select Portfolio Service | $540,000 |
| Peaceful Pines, LLC | 13130 Geary Blvd | Rapid City | SD | Shellpoint Mortgage | $1,060,000 |
| Black Hills on Ninth, LLC | 1329 9th St | Rapid City | SD | Select Portfolio Service | $386,000 |

| | | | | | |
|---|---|---|---|---|---|
| Estates on the West Main, LLC | 4408 W Main St | Rapid City | SD | Select Portfolio Service | $422,000 |
| Broadmoor Villas, LLC | 3233 Broadmoor Dr | Rapid City | SD | Select Portfolio Service | $488,000 |

(collectively, the "SD Single Family Homes" and each a "SD Single Family Home").

The SD Single Family Homes are currently listed and marketed for sale or will be shortly. The Debtor anticipates selling the SD Single Family Homes via a private sale in a timely manner. Accordingly, the Debtor proposes the following mechanism to sell the SD Single Family Homes and satisfy the respective lender.

The Debtor shall have ***one (1) year*** following the Effective Date of the Plan to obtain a binding contract for the sale of each of the SD Single Family Homes. Said binding contract for sale must satisfy all liens and any other obligations secured by each of the SD Single Family Homes.

If the Debtor obtains a binding a contract for sale of the SD Single Family Homes via a private transaction, consistent with the preceding paragraph, secured claims thereon shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing. In the event the Debtor is able to pay the Class 2 Claims in full prior to ***one (1) year*** following the Effective Date of the Plan, then the Debtor is not required to sell the particular SD Single Family Home that is paid off. To the extent Arguelles is not paid off by ***the Cheyenne River Ranch, LLC Property sale, Arguelles will receive the funds that would have otherwise been distributed to the Debtor from the sale of the*** SD Single Family Homes until satisfied in full on the Arguelles Allowed Claim.

For more information, see Section 5.04 of the Plan below.

(b) ***Auction and Sale Procedures Applicable to Both the Cheyenne River Ranch, LLC Property and the SD Single Family Homes***

If the Debtor is unsuccessful in obtaining a binding contract for private sale of the Cheyenne River Ranch, LLC Property or a part thereof consistent with Section 2.03(a)(i) of the Plan prior to the expiration of six (6) months following the Effective Date, and/or if the Debtor is unsuccessful in obtaining a binding contract for private sale of any of the SD Single Family Homes consistent with Section 2.03(a)(ii) of the Plan prior to the expiration of one (1) year following the Effective Date, the Cheyenne River Ranch, LLC Property and/or the SD Single Family Homes, whichever applicable, shall, pursuant to sections 363 and 1123(a)(5) of the Code, be sold free and clear of all liens, claims and encumbrances through the Auction and Sale procedures proposed herein. ***The specific calendar dates and times described below (e.g., the Bid Deadline, the Auction, etc.) for each the Cheyenne River Ranch, LLC Property and the SD Single Family Homes shall be set by the Court in the Confirmation Order entered by the Court.***

A potential bidder may be qualified to participate in the Auction if by the bid deadline of three business days prior to the Auction (the "Bid Deadline") the potential bidder:

(i) Has been determined by the Debtor to be reasonably likely (based on financial information submitted by the potential bidder), to submit a bona fide offer and to be able to consummate the transaction if selected as a Successful Bidder (as defined below); and

(ii) Provides each of the following to the Debtor: (i) for the Cheyenne River Ranch, LLC, a deposit of five hundred thousand dollars ($500,000) and for any of the SD Single Family Homes, a deposit of ten (10%) of the SD SFH Estimated Value (in either case, the "Deposit") payable by cashier's check or wire transfer into the non-interest bearing escrow account of BMUZ, along with the SSN or EIN of the bidding person or entity; (ii) an executed purchase and sale agreement in a form acceptable to the Debtor, including, among other traditional and customary terms, the purchase price willing to be paid for the Cheyenne River Ranch, LLC Property or the SD Single Family Homes, whichever applicable; and (iv) other information reasonably requested by the Debtor.

Hereinafter, subsections (i) and (ii) immediately above shall be referred to as the "Qualifying Bid Packet." The bidder's Qualifying Bid Packet must include the bidder's mailing address, telephone and facsimile numbers, and email address where the bidder may be contacted. Acceptable methods of delivery of the Qualifying Bid Packet include first class U.S. Mail, facsimile and/or email. The Qualifying Bid Packet must be delivered and received with the items described above no later than 5:00 P.M. E.S.T. on the date of the Bid Deadline to the following parties:

For the Cheyenne River Ranch, LLC: (a) counsel for the Debtor, Thomas G. Zeichman, Esq., Beighley, Myrick, Udell & Zeichman, P.A., 2385 NW Executive Center Drive, Suite 300, Boca Raton, Florida 33428, Email: tzeichman@gmail.com; (b) counsel for BankWest, Inc., Brian Rich, Esq., Berger Singerman, LLP, 313 N. Monroe Street, Suite 301, Tallahassee, Florida 32301, Email: brich@bergersingerman.com; (c) counsel Alejandro Arguelles and Gatoralex Consulting, LLC, Daniel Gonzalez, Esq., Meland Budwick, P.A., 200 S Biscayne Blvd, Ste 3200, Miami, FL 33131-5323, Email: dgonzalez@melandbudwick.com.

For the SD Single Family Homes: (a) counsel for the Debtor, Thomas G. Zeichman, Esq., Beighley, Myrick, Udell & Zeichman, P.A., 2385 NW Executive Center Drive, Suite 300, Boca Raton, Florida 33428, Email: tzeichman@gmail.com; (b) counsel Alejandro Arguelles and Gatoralex Consulting, LLC, Daniel Gonzalez, Esq., Meland Budwick, P.A., 200 S Biscayne Blvd, Ste 3200, Miami, FL 33131-5323, Email: dgonzalez@melandbudwick.com.

Prior to the Auction, the Debtor shall evaluate each Qualifying Bid Packet submitted in accordance with the foregoing paragraph and may then identify a person, persons, entity or entities from among those that submitted a Qualifying Bid Packet and deem those person(s) or entity(ies) as the "Qualified Bidder(s)." By participating in the Auction, each Qualified Bidder consents to

its bid being designated as a back-up bid ("Back-Up Bid").

Between the Bid Deadline and the Auction and during the Auction, the Debtor may, in its discretion, discuss, negotiate, or seek clarification of any qualified bid ("Qualified Bid").

Additionally, the holders of Allowed Claims secured by the Cheyenne River Ranch Property or the SD Single Family Home(s), whichever applicable shall be entitled, but not required, to credit bid the amount of its Allowed Secured Claim. Said holder of an Allowed Secured Claim shall be deemed a Qualified Bidder without any further submissions to the Debtor.

No later than two business days prior to the Auction, the Debtor shall file and serve upon all interested parties entitled to receive notice, including the holders of Qualified Bids, fully executed copies of the Qualified Bids to be considered at the Auction (the "Qualified Bid Summary"). This requirement is waived in the event that there are no Qualified Bids. The Debtor shall notify all Qualified Bidders, no later than two business days prior to the Auction, that they may participate in the Auction.

If there are one or more Qualified Bidders on or before the Bid Deadline, then the Auctioneer shall conduct the Auction on the date and time and at a location determined by the Court, at which time the Auctioneer will determine which bid provides the highest and best offer for the Cheyenne River Ranch, LLC Property or the SD Single Family Home, whichever applicable.

The Auction shall be conducted by the Auctioneer and shall be a forum in which the Qualified Bidders may make competing bids to purchase the Cheyenne River Ranch, LLC Property, in minimum bid increments of one hundred thousand dollars ($100,000.00) or the SD Single Family Homes, in minimum bid increments of ten thousand dollars ($10,000.00), whichever applicable, or increments as otherwise decided by the Debtor. The Auction shall conclude when the Auctioneer receives what it determines is the highest and best offer to purchase the Cheyenne River Ranch, LLC Property or a SD Single Family Home, whichever applicable (the "Successful Bid") from a Qualified Bidder (the "Successful Bidder"). The Auctioneer may also identify an acceptable Back-Up Bid. Qualified Bidders may appear at the Auction and may submit competing bids telephonically. A credit bid by a holder of an Allowed Secured Claim, may qualify as a Successful Bid, and in such circumstance, said holder of an Allowed Secured Claim would qualify as the Successful Bidder.

Except as otherwise stated herein, each Deposit shall be maintained in the non-interest-bearing account of BMUZ and is subject to the jurisdiction of the Court. Within five (5) business days from the conclusion of the Auction, an authorized representative of BMUZ shall return all Deposits to all Qualified Bidders except the Successful Bidder and the person or entity that submitted the Back-Up Bid (the "Back-Up Bidder"). A credit bid by a holder of an Allowed Secured Claim, including may qualify as a Back-Up Bid, and, in such circumstance, said holder of an Allowed Secured Claim would qualify as a Back-Up Bidder. In the event that the Successful Bidder closes the sale of the Cheyenne River Ranch, LLC Property or a SD Single Family Home, whichever applicable (the "Sale"), an authorized representative of BMUZ shall return the Back-Up Bidder's Deposit within five (5) business days from the closing of the Sale. If the Successful

Bidder or the Back-Up Bidder closes on the Sale of the Cheyenne River Ranch, LLC Property or a SD Single Family Home, whichever applicable, its Deposit shall be applied by the Debtor against the purchase price.

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the Sale procedures outlined herein. All purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida. All Qualified Bidders shall be bound by their bids until conclusion of the Auction. If the Successful Bidder is unable or unwilling to close the Sale, the Successful Bidder shall forfeit its Deposit (a "Forfeited Successful Bidder Deposit") to the Debtor and the Debtor shall close the Sale with the Back-Up Bidder, without further notice or hearing, who shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding Back-Up Bidder's purchase agreement no later than five (5) days thereafter. If the Back-Up Bidder, if any, is unable or unwilling to close the Sale in the time permitted, the Back-Up Bidder shall forfeit its Deposit (a "Forfeited Back-Up Bidder Deposit") to the Debtor.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE'S FEES

The following Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

### 3.01. Allowed Administrative Claims.

Except as otherwise stated herein, all requests for payment of Administrative Claims and applications for payment of Professional Fee Claims shall be filed with the Court by the deadline set pursuant to an order of the Court. Administrative Claims that have already been filed or approved by the Court need not be re-filed. Except as provided herein, any Administrative Claim or Professional Fee Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred. Holders of Post-Confirmation Administrative Claims may seek payment for such claims following the Confirmation Hearing, and the deadline set pursuant to an order of the Court with respect to Administrative Claims that arose prior to the Petition Date will not discharge or bar Post-Confirmation Administrative Claims

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims. All other holders of Allowed Administrative Claims (with the exception of Professional Fee Claims which will be paid 100% of the amount allowed by the Court upon application to the Court and those Claims otherwise specifically treated in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

### 3.02. Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date, agrees to a different treatment, or is otherwise specifically treated in the Plan, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of the Debtor's business on the date of assessment of such Claim.

### 3.03. U.S. Trustee's Fees.

The Debtor shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment a quarterly report and appropriate affidavit indicating income and disbursements for the relevant periods.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS

For purposes of this Plan, the Classes of Claims against or in the Debtor shall be as follows:

| Class | Description | Status | Voting Status |
|---|---|---|---|
| Class 1 | Allowed BankWest, Inc. Secured Claims | Impaired | Yes |
| Class 2 | Allowed Arguelles Secured Claims | Impaired | Yes |
| Class 3 | Allowed Frannie Mae Secured Claim | Impaired | Yes |
| Class 4 | Allowed Citibank N.A. Secured Claim | Impaired | Yes |
| Class 5 | Allowed Wilmington Savings Fund, FSB Secured Claim 17-2 | Impaired | Yes |
| Class 6 | Wilmington Savings Fund, FSB Secured Claim 18 | Impaired | Yes |
| Class 7 | Allowed U.S. Bank National Association Secured Claim 21 | Impaired | Yes |
| Class 8 | Allowed Wilmington Savings Fund, FSB Secured Claim 23 | Impaired | Yes |
| Class 9 | Allowed Wilmington Savings Fund, FSB Secured Claim 24-2 | Impaired | Yes |
| Class 10 | Allowed Metropolitan Secured Claim 25 | Impaired | Yes |
| Class 11 | Allowed Wilmington Savings Fund, FSB Secured Claim 28-2 | Impaired | Yes |

| | | | |
|---|---|---|---|
| Class 12 | Allowed Wilmington Savings Fund, FSB Secured Claim 31 | Impaired | Yes |
| Class 13 | Allowed Wilmington Savings Fund, FSB Secured Claim 36 | Impaired | Yes |
| Class 14 | Allowed J.P. Morgan Mortgage Trust Secured Claim 37 | Impaired | Yes |
| Class 15 | Allowed Wilmington Savings Fund, FSB Secured Claim 38 | Impaired | Yes |
| Class 16 | Allowed Wilmington Savings Fund, FSB Secured Claim 40 | Impaired | Yes |
| Class 17 | Allowed Citibank, N.A. POC 42 Claim | Impaired | Yes |
| Class 18 | Allowed AmeriCredit Secured Claim | Impaired | Yes |
| Class 19 | Allowed Honda Secured Claim | Impaired | Yes |
| Class 20 | Allowed Truist Secured Claim | Impaired | Yes |
| Class 21 | Allowed Valley National Bank Homestead Claim | Impaired | Yes |
| Class 22 | Allowed Secured Claim of Valley National Bank Melbourne | Impaired | Yes |
| Class 23 | Allowed Secured Claim of Greystone | Impaired | Yes |
| Class 24 | Allowed FIB Mountain Claim | Impaired | Yes |
| Class 25 | Allowed FIB Oxford Claim | Impaired | Yes |
| Class 26 | Allowed FIB Horizon Claim | Impaired | Yes |
| Class 27 | Allowed DW Villard Claim | Impaired | Yes |
| Class 28 | Allowed DW Energy Portfolio Claim | Impaired | Yes |
| Class 29 | Allowed FB&T South Cliff Claim | Impaired | Yes |
| Class 30 | Allowed FIB Dakota Flats Claim | Impaired | Yes |
| Class 31 | Allowed FIB Terry Peak Claim | Impaired | Yes |
| Class 32 | Allowed BW Rushmore Claim | Impaired | Yes |
| Class 33 | Allowed Caledonia Claim | Impaired | Yes |
| Class 34 | Allowed SF Brookview Claim | Impaired | Yes |
| Class 35 | Allowed Ridge View Claim | Impaired | Yes |
| Class 36 | Allowed SPS Teton Claim | Impaired | Yes |
| Class 37 | Allowed SF Larkspur Claim | Impaired | Yes |
| Class 38 | Allowed Unsecured Priority Claims | Impaired | Yes |
| Class 39 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 40 | Allowed Equity Interest/Revesting of Personal Property in the Reorganized Debtor | Impaired | No |

# ARTICLE V

## TREATMENT OF CLASSIFIED CLAIMS

### 5.01. Class 1. Allowed BankWest, Inc. Secured Claims

(a) Description. Class 1 consists of the Allowed BankWest, Inc. Secured Claim, which consists of one (1) Secured Claims in the approximate amounts of $15,601,682.50 [Proof of Claim No. 4] plus Post-Petition arrearages, if any, held by BankWest, Inc. and secured by Lien(s) on the Cheyenne River Ranch, LLC Property.

(b) Treatment. Cheyenne River Ranch, LLC shall have until 90 days after the Effective Date to pay the $1,322,737.10 in interest (the "Ranch Reinstatement Payment". If the foregoing interest payment is made, then Cheyenne River Ranch, LLC, will resume payments under the loan documents attached to the Proof of Claim.

Should the Debtor not reinstate, the Cheyenne River Ranch, LLC Property is currently listed and marketed for sale. In the event that the Debtor obtains a binding contract for sale of the Cheyenne River Ranch, LLC Property via a private transaction on or before the expiration of six (6) months following the Effective Date, consistent with Section 2.03(a)(i) of the Plan, the holder of the Allowed Class 1 Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Cheyenne River Ranch, LLC Property or part there of via a private transaction or cash out refinance on or before the expiration of six (6) month following the Effective Date, the Cheyenne River Ranch, LLC Property or part thereof shall be sold via the public Auction and Sale process described in Section 2.03(b) of the Plan.

In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, in full and final satisfaction, settlement, release, extinguishment and discharge of the Allowed Class 1 and Class 2 the Purchase Price, plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), shall be distributed to the holders of the Allowed Class 1 and Class 2 Claims to the same extent and priority established under applicable non-bankruptcy law. In the event that the Purchase Price does not satisfy in full the Allowed Class 1 and Class 2, the holders of the Allowed Class 1 Claim, shall be entitled to a deficiency claim in an amount necessary to satisfy in full the Allowed Amount of the Class 1 Claim which shall then be treated as an Allowed General Unsecured Claim in Class 39 of the Plan. If the Purchase Price exceeds the total amount of the Allowed Class 1, Class 2, and Class 3 Claims, the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding said total amount.

The Debtor anticipates that the sale of the Cheyenne River Ranch, LLC Property (via private sale or via the Auction and Sale procedures outlined herein) will provide for payment in full of the Allowed Class 1 Claim. Upon satisfaction in full of the Allowed Class 1 Claim, any and all guaranty claims arising from or relating to the Class 1 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

In the event that the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser, then the Forfeited Deposits, if any, shall be paid to the holder of the Allowed Class 1 Claim. In such circumstance, the holder of the Allowed Class 1 Claim shall apply the Forfeited Deposits to reduce the Allowed Amount of the Class 1 Claim; however, the Allowed Class 1 Claim shall not be deemed satisfied, settled, released, extinguished or discharged and shall remain enforceable against Debtor and any guarantors of the debt comprising, arising from or related to the Allowed Class 1 Claim.

(c) Impairment. The Class 1 Claims are Impaired. Accordingly, the holder(s) of the Allowed BankWest Secured Claims are entitled to vote to accept or reject the Plan.

**5.02. Class 2. Allowed Arguelles Secured Claim**

(a) Description. Class 2 consists of the Allowed Arguelles Secured Claim, which consists of the Secured Claim in the approximate amount of $10,161,057.00 less payments held by Arguelles and secured by a charging lien on Bayit En La Playa LLC; L'Chaim Farm LLC; L'Chaim 18 Inc.; Tzadik Zorro LLC; Cheyenne River Ranch LLC; Tzadik Mount Rushmore Hotel LLC; Larkspur Hills LLC; Tzadik Lacrosse Apartments LLC; Horizon Apartments LLC; Oxford Apartments LLC; Tzadik Rapid City Portfolio I LLC; Tzadik Rapid City Portfolio II LLC; Tzadik Hidden Hills Apartments LLC; Tzadik Taylor's Place LLC; Tzadik Woodlake Apartments LLC; Garden Villas Apartment LLC; Tzadik Properties LLC; Tzadik South Dakota Property Management LLC; Tzadik Sioux Falls Portfolio IV, LLC; Tzadik Blue Hawk LLC; Tzadik Energy Portfolio LLC; Tzadik Fargo Portfolio I LLC; Tzadik Taylor's Place LLC; Tzadik Mountain View LLC; Tzadik Management Group 2 LLC; Tzadik South Dakota Portfolio I LLC; Tzadik South Dakota Portfolio II LLC; Tzadik City View SM LLC; Tzadik LLC; Tzadik Crown South Houston Portfolio LLC; Tzadik Lone Oaks IE LLC; Tzadik Loan Oaks Apartments PE LLC; Tzadik Sioux Falls lE LLC; Tzadik Sioux Falls PE LLC; Tzadik Sioux Falls Portfolio MB LLC; Tzadik Sioux Falls Portfolio SO LLC; Tzadik St. Louis Portfolio I LLC; Tzadik St. Louis Portfolio II LLC; Tzadikzorro LLC, Tzadik TriCity Portfolio LLC; Tzadik Property Management LLC; Tzadik Consulting LLC; Tzadik Management Group LLC; Tzadik Tulsa Portfolio LLC; Tzadik Oaks, LLC; Tzadik Acquisitions LLC; TS/TZM Eagle Portfolio, LLC; Tzadik City View, LLC; Tzadik Eagle Bay, LLC; Tzadik Eagle Briar, LLC; Tzadik Eagle Oaks, LLC; Tzadik Eagle Park, LLC; Tzadik Eagle Millenium, LLC; Tzadik Eagle Reserve, LLC; Tzadik Georgia Portfolio, LLC; Tzadik Georgia Portfolio II, LLC; Tzadik Sioux Falls I, LLC; Tzadik Sioux Falls Portfolio I, LLP; Tzadik Sioux Falls III, LLC; 1020 Pennsylvania Ave LLC; Tzadik Leasing, LLC; TMG 2 LLC; and FC Tzadik Property Owner, LP.

(b) Treatment. If the Debtor exercises the Ranch Reinstatement Payment, then the Debtor will seek to provide a payment of $1,000,000.00 to Arguelles within 60 days by obtaining re-financing or loan on the Cheyenne River Ranch, LLC Property or a different non-debtor asset. Should the Ranch Reinstatement Payment not occur, the Cheyenne River Ranch, LLC Property is currently listed and marketed for sale. In the event that the Debtor obtains a binding contract for sale of the Cheyenne River Ranch, LLC Property via a private transaction on or before the expiration of six (6) months following the Effective Date or cash out refinance, consistent with Section 2.03(a)(i) of the Plan, the holder of the Allowed Class 2 Secured Claim shall, in full satisfaction,

settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Cheyenne River Ranch, LLC Property via a private transaction or cash out refinance on or before the expiration of six (6) month following the Effective Date, the Cheyenne River Ranch, LLC Property shall be sold via the public Auction and Sale process described in Section 2.03(b) of the Plan.

In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, in full and final satisfaction, settlement, release, extinguishment and discharge of the Allowed Class 1 and Class 2, the Purchase Price, plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), shall be distributed to the holders of the Allowed Class 1 and Class 2 Claims to the same extent and priority established under applicable non-bankruptcy law. In the event that the Purchase Price does not satisfy in full the Allowed Class 2 Claim, the holders of the Allowed Class 1 and Class 2 Claims, as applicable, shall be then the Class 2 Claim holder will be entitled to receive payments based on the sales of the SD Single Family Homes. If the Purchase Price exceeds the total amount of the Allowed Class 1 and Class 2 Claims, the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding said total amount.

The Debtor anticipates that the sale of the Cheyenne River Ranch, LLC Property (via private sale or via the Auction and Sale procedures outlined herein) will provide for payment in full of the Allowed Class 2 Claim. Upon satisfaction in full of the Allowed Class 2 Claim, any and all guaranty claims arising from or relating to the Class 2 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

In the event that the Sale of the Cheyenne River Ranch, LLC Property does not close with the Successful Bidder or a Back-Up Bidder as purchaser, the Allowed Class 2 Claim shall be paid from the proceeds of the South Dakota Single Family Homes Sale any amount which otherwise would have been paid to the Debtor under the process identified above. In the event that the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser, the Allowed Class 2 Claim shall not be deemed satisfied, settled, released, extinguished or discharged and shall remain enforceable against Debtor for the Allowed Class 2 Claim.

(c) Impairment. The Class 2 Claim is Impaired. Accordingly, the holder of the Allowed Arguelles Secured Claim is entitled to vote to accept or reject the Plan.

**5.03.Class 3. Fannie Mae Secured Claim**

(a) Description. Class 3 consists of the Fannie Mae two proof of claims [Claim No. 15] for $30,610,578.83 and [Claim No. 16] $47,887,036.73. The Fanne Mae Claims check that they unsecured; however, there addendum asserts they are secured by Property of the Debtor; however, this is inaccurate as they are secured by property owned by the Corporate Debtors.

(b) Treatment. Reclassified as general unsecured claim in Class 39.

(c) Impairment. The Class 3 Claim is Impaired. Accordingly, the holder of the Allowed Fannie Mae Secured Claim is entitled to vote to accept or reject the Plan.

**5.04.Class 4. Allowed Citibank N.A. Secured Claim**

(a) Description. Class 4 consists of the Allowed Citibank Secured Claim, which consists of the Secured Claim in the approximate amount of $289,400.57 plus Post-Petition arrearages, if any, held by Citibank, N.A. not in its individual capacity, but solely as trustee of COLT 2022-6 Trust [Proof of Claim No. 14] secured by a Lien on 4408 W Main St, Rapid City ("W. Main Property").

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the W. Main Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 4 Citi Bank Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the W. Main Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the W. Main Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 4 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Citbank Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 4 Secured Claim described herein, the Debtor shall pay to the holder of the Class 4 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 4 to the extent necessary to achieve a total payout to Class 4 which is equal to the amount of the Class 4 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 4, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 4 Secured Claim described herein, the holder of the Class 4 Citibank Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 4 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 4 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 4 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 4 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 4 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Citibank Closing Amount exceed the Allowed Amount of the Class 4 Secured Claim.

Upon payment to holder of the Class 4 Secured Claim of the Citibank Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 4 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Citibank is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Citibank. In such circumstance, Citibank shall apply the Forfeited Deposits to reduce the Class 4 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 4 Claim is Impaired. Accordingly, the holder of the Allowed Citibank Secured Claim is entitled to vote to accept or reject the Plan.

**5.05.Class 5. Allowed Wilmington Savings Fund, FSB Secured Claim 17-2**

(a) Description. Class 5 consists of the Allowed Wilmington Larkspur Secured Claim, which consists of the Secured Claim in the approximate amount of $571,677.57 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, Not on its Individual Capacity, but Solely as Owner Trustee for CSMC 2021-NQM7 [Proof of Claim No. 17-2] secured by a Lien on 20768 Larkspur Rd., Sturgis, SD 57785 ("Larkspur Property") which is owned by Larkspur Hills, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Larkspur Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 5 Wilmington Larkspur Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Larkspur Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Larkspur Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 5 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Larkspur Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 5 Secured Claim described herein, the Debtor shall pay to the holder of the Class 5 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 5 to the extent necessary to achieve a total payout to Class 4 which is equal to the amount of the Class 5 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 5, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 5 Secured Claim described herein, the holder of the Class 5 Wilmington Larkspur Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 5 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 4 Secured Claim; and
4. If the Purchase Price exceeds the amount of the Class 5 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 5 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 5 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Larkspur Closing Amount exceed the Allowed Amount of the Class 5 Secured Claim.

Upon payment to holder of the Class 5 Secured Claim of the Wilmington Larkspur Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 5 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance,

Wilmington shall apply the Forfeited Deposits to reduce the Class 5 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 5 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Larkspur Secured Claim is entitled to vote to accept or reject the Plan.

**5.06.Class 6. Allowed Wilmington Savings Fund, FSB Secured Claim 18**

(a) Description. Class 6 consists of the Allowed Wilmington Peaceful Pines Secured Claim, which consists of the Secured Claim in the approximate amount of $610,103.58 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, a Federal Savings Bank, Not on its Individual Capacity but Solely as Indenture Trustee for CIM Trust 2023-13 [Proof of Claim No. 18] secured by a Lien on 13130 Geary Blvd, Rapid City, SD 57702 ("Peaceful Pines Property") which is owned by Peaceful Pines, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Peaceful Pines Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 6 Wilmington Peaceful Pines Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Peaceful Pines Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Peaceful Pines Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 6 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Peaceful Pines Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 6 Secured Claim described herein, the Debtor shall pay to the holder of the Class 6 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 6 to the extent necessary to achieve a total payout to Class 6 which is equal to the amount of the Class 4 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 6, a portion of the Forfeited

Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 4 Secured Claim described herein, the holder of the Class 4 Wilmington Peaceful Pines Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 6 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 6 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 6 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 6 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 6 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Peaceful Pines Closing Amount exceed the Allowed Amount of the Class 6 Secured Claim.

Upon payment to holder of the Class 6 Secured Claim of the Wilmington Peaceful Pines Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 6 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 6 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 6 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Peaceful Pines Secured Claim is entitled to vote to accept or reject the Plan.

### 5.07. Class 7. U.S. Bank National Association Secured Claim 21

(a) Description. Class 7 consists of the Allowed U.S. Bank Secured Claim, which consists of the Secured Claim in the approximate amount of $1,879,279.18 plus Post-Petition arrearages, if any, held by U.S. Bank National Association, as Trustee, on Behalf of the Colt 2021-2 Mortgage Loan Trust, a New York Common Law Trust [Proof of Claim No. 21] secured by a Lien on 8875S Highway A1A, Melbourne Beach, FL 32951 ("Bayit Property") which is owned by Bayit en La Playa, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the

claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Bayit Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 7 U.S. Bank Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Bayit Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Bayit Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 7 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "U.S. Bank Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 7 Secured Claim described herein, the Debtor shall pay to the holder of the Class 7 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 7 to the extent necessary to achieve a total payout to Class 7 which is equal to the amount of the Class 7 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 7, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 7 Secured Claim described herein, the holder of the Class 7 U.S. Bank Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 7 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 7 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 7 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 7 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds

exceeding the full amount of the Class 7 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the U.S. Bank Closing Amount exceed the Allowed Amount of the Class 7 Secured Claim.

Upon payment to holder of the Class 7 Secured Claim of the U.S. Bank Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 7 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) U.S. Bank is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to U.S. Bank. In such circumstance, U.S. Bank shall apply the Forfeited Deposits to reduce the Class 7 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 7 Claim is Impaired. Accordingly, the holder of the Allowed U.S. Bank Secured Claim is entitled to vote to accept or reject the Plan.

**5.08. Class 8. Allowed Wilmington Savings Fund, FSB Secured Claim 23**

(a) Description. Class 8 consists of the Allowed Wilmington Estate Oak Secured Claim, which consists of the Secured Claim in the approximate amount of $1,226,983.83 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, Not on its Individual Capacity but Solely as Owner Trustee of OBX 2021-NQM4 Trust [Proof of Claim No. 23] secured by a Lien on 3631 Estate Oak Cir., Fort Lauderdale, FL 33312 ("Estate Oak Property") which is the Debtor's exempt homestead property.

(b) Treatment. The Debtor will continue and reaffirm payments under the note and mortgage.

(c) Impairment. The Class 8 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Estate Oak Secured Claim is entitled to vote to accept or reject the Plan.

**5.09. Class 9. Allowed Wilmington Savings Fund, FSB Secured Claim 24-2**

(a) Description. Class 9 consists of the Allowed Wilmington Charmwood Secured Claim, which consists of the Secured Claim in the approximate amount of $236,207.05 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, a Federal Savings Bank, Not on its Individual Capacity but Solely as Indenture Trustee for CIM Trust 2023-12 [Proof of Claim No. 24-2] secured by a Lien on 4710 Charmwood Dr, Rapid City, SD 57701 ("Charmwood Property") which is owned by Charmwood House, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage

("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Charmwood Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 9 Wilmington Charmwood Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

> In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Charmwood Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Charmwood Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 9 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Charmwood Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 9 Secured Claim described herein, the Debtor shall pay to the holder of the Class 9 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 9 to the extent necessary to achieve a total payout to Class 9 which is equal to the amount of the Class 9 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 9, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 9 Secured Claim described herein, the holder of the Class 9 Wilmington Charmwood Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 9 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 9 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 9 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 9 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 9 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Charmwood Closing Amount exceed the Allowed Amount of the Class 9 Secured Claim.

Upon payment to holder of the Class 9 Secured Claim of the Wilmington Charmwood Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 9 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 9 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 9 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Charmwood Secured Claim is entitled to vote to accept or reject the Plan.

**5.10.Class 10. Allowed Metropolitan Tower Life Secured Claim 25**

(a) Description. Class 10 consists of the Allowed Metropolitan Secured Claim, which consists of the Secured Claim in the approximate amount of $585,663.82 plus Post-Petition arrearages, if any, held by Metropolitan Tower Life Insurance Company [Proof of Claim No. 25] secured by a Lien on 5501 Woodland Ln., Fort Lauderdale, FL 33312 ("Woodland Property") which is owned by Adam Hendry, as Trustee of the Alef Trust, UTD December 10, 2020, As Amended by the First Amendment to the Alef Trust Dated December 11, 2020 an Second Amendment to the Alef Trust Dated July 9, 2021.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Woodland Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 10 Metropolitan Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Woodland Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Woodland Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 10 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds

from the Sale in the following amounts (collectively, the "Metropolitan Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 10 Secured Claim described herein, the Debtor shall pay to the holder of the Class 10 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 10 to the extent necessary to achieve a total payout to Class 10 which is equal to the amount of the Class 10 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 10, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 10 Secured Claim described herein, the holder of the Class 10 Metropolitan Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 10 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 10 Secured Claim; and
4. If the Purchase Price exceeds the amount of the Class 10 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 10 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 10 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Metropolitan Closing Amount exceed the Allowed Amount of the Class 10 Secured Claim.

Upon payment to holder of the Class 10 Secured Claim of the Metropolitan Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 10 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Metropolitan is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Metropolitan. In such circumstance,

Metropolitan shall apply the Forfeited Deposits to reduce the Class 10 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 10 Claim is Impaired. Accordingly, the holder of the Allowed Metropolitan Secured Claim is entitled to vote to accept or reject the Plan.

**5.11.Class 11. Allowed Wilmington Savings Fund, FSB Secured Claim 28-2**

(a) Description. Class 11 consists of the Allowed Wilmington Shadow Pines Secured Claim, which consists of the Secured Claim in the approximate amount of $634,643.05 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, Not on its Individual Capacity but Solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware Statutory Trust [Proof of Claim No. 28-2] secured by a Lien on 4811 Cliff Dr, Rapid City, SD 57702 ("Shadow Pines Property") which is owned by Shadow Pines, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Shadow Pines Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 11 Wilmington Shadow Pines Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Shadow Pines Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Shadow Pines Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 11 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Shadow Pines Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 11 Secured Claim described herein, the Debtor shall pay to the holder of the Class 11 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 11 to the extent necessary to achieve a total payout to Class 11 which is equal to the amount of the Class 11 Secured Claim described

herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 11, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 11 Secured Claim described herein, the holder of the Class 11 Wilmington Shadow Pines Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 11 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 11 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 11 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 11 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 11 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Shadow Pines Closing Amount exceed the Allowed Amount of the Class 11 Secured Claim.

Upon payment to holder of the Class 11 Secured Claim of the Wilmington Shadow Pines Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 11 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 11 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 11 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Shadow Pines Secured Claim is entitled to vote to accept or reject the Plan.

**5.12.Class 12. Allowed Wilmington Savings Fund, FSB Secured Claim 31**

(a) Description. Class 12 consists of the Allowed Wilmington Oak Cottage Secured Claim, which consists of the Secured Claim in the approximate amount of $355,539.94 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, a Federal Savings Bank, Not on its Individual Capacity but Solely as Indenture Trustee for CIM Trust 2023-12 [Proof of Claim No. 31] secured by a Lien on 51 2nd St, Lead, SD 57754 ("Oak Cottage Property") which is owned by Oak Cottage, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Oak Cottage Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 12 Wilmington Oak Cottage Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Oak Cottage Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Oak Cottage Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 12 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Oak Cottage Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 12 Secured Claim described herein, the Debtor shall pay to the holder of the Class 12 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 12 to the extent necessary to achieve a total payout to Class 12 which is equal to the amount of the Class 12 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 12, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 12 Secured Claim described herein, the holder of the Class 12 Wilmington Oak Cottage Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 12 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 12 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 12 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 12 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 12 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Oak Cottage Closing Amount exceed the Allowed Amount of the Class 12 Secured Claim.

Upon payment to holder of the Class 12 Secured Claim of the Wilmington Oak Cottage Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 12 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 12 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 12 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Oak Cottage Secured Claim is entitled to vote to accept or reject the Plan.

**5.13.Class 13. Allowed Wilmington Savings Fund, FSB Secured Claim 36**

(a) Description. Class 13 consists of the Allowed Wilmington Sagewood Secured Claim, which consists of the Secured Claim in the approximate amount of $246,201.23 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, a Federal Savings Bank, Not on its Individual Capacity but Solely as Indenture Trustee for CIM Trust 2023-12 [Proof of Claim No. 36] secured by a Lien on 1023 Sagewood St, Rapid City, SD 57701 ("Sagewood Property") which is owned by Sagewood Place, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Sagewood Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 13 Wilmington Sagewood Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Sagewood Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Sagewood Property shall be sold via the public Auction and Sale process

described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 13 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Sagewood Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 13 Secured Claim described herein, the Debtor shall pay to the holder of the Class 13 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 13 to the extent necessary to achieve a total payout to Class 13 which is equal to the amount of the Class 13 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 13, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 13 Secured Claim described herein, the holder of the Class 13 Wilmington Sagewood Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 13 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 13 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 13 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 13 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 13 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Closing Amount exceed the Allowed Amount of the Class 13 Secured Claim.

Upon payment to holder of the Class 13 Secured Claim of the Wilmington Sagewood Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 13 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 13 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 13 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Sagewood Secured Claim is entitled to vote to accept or reject the Plan.

**5.14.Class 14. Allowed J.P. Morgan Mortgage Trust Secured Claim 37**

(a) Description. Class 14 consists of the Allowed J.P. Morgan Secured Claim, which consists of the Secured Claim in the approximate amount of $797,719.03 plus Post-Petition arrearages, if any, held by J.P. Morgan Mortgage Trust 2022-DSC1 c/o Citibank, N.A. as Delaware Trustee [Proof of Claim No. 37] secured by a Lien on 3830 SW 54th Street, Dania Beach, FL 33312 ("Shady Ridge Property") which is owned by Shady Ridge Estates, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

Within one (1) year following the Effective Date the Debtor will cause Shady Ridge Estates to pay all outstanding interest (the ("Shady Reinstatement Payment") and then resume principal and interest payments under the loan documents with any arrearage added to the end of the loan and amortized.

If the Debtor does not make the Shady Reinstatement Payment, then in the event that the Debtor obtains a binding contract for sale of the Shady Ridge Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 14 J.P. Morgan Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Shady Ridge Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Shady Ridge Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 14 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " J.P. Morgan Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 14 Secured Claim described herein, the Debtor shall pay to the holder of the Class 14 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 14 to the extent necessary to achieve a total payout to Class

14 which is equal to the amount of the Class 14 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 14, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 14 Secured Claim described herein, the holder of the Class 14 J.P. Morgan Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 14 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 14 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 14 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 14 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 14 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the J.P. Morgan Closing Amount exceed the Allowed Amount of the Class 14 Secured Claim.

Upon payment to holder of the Class 14 Secured Claim of the J.P. Morgan Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 14 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) J.P. Morgan is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to J.P. Morgan. In such circumstance, J.P. Morgan shall apply the Forfeited Deposits to reduce the Class 14 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 14 Claim is Impaired. Accordingly, the holder of the Allowed J.P. Morgan Secured Claim is entitled to vote to accept or reject the Plan.

**5.15.Class 15. Allowed Wilmington Savings Fund, FSB Secured Claim 38**

(a) Description. Class 15 consists of the Allowed Wilmington Wellington Secured Claim, which consists of the Secured Claim in the approximate amount of $275,123.07 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, a Federal Savings Bank, Not on its Individual Capacity but Solely as Indenture Trustee for CIM Trust 2023-12 [Proof of Claim No. 38] secured by a Lien on 6508 Wellington Dr, Rapid City, SD 57702 ("Wellington Property") which is owned by Wellington Estates Place, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Wellington Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 15 Wilmington Wellington Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Wellington Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Wellington Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 15 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Wellington Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 15 Secured Claim described herein, the Debtor shall pay to the holder of the Class 15 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 15 to the extent necessary to achieve a total payout to Class 15 which is equal to the amount of the Class 15 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 15, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 15 Secured Claim described herein, the holder of the Class 15 Wilmington Wellington Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 15 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 15 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 15 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 15 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 15 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Wellington Closing Amount exceed the Allowed Amount of the Class 15 Secured Claim.

Upon payment to holder of the Class 15 Secured Claim of the Wilmington Wellington Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 15 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 15 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 15 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Wellington Secured Claim is entitled to vote to accept or reject the Plan.

**5.16. Class 16. Allowed Wilmington Savings Fund, FSB Secured Claim 40**

(a) Description. Class 16 consists of the Allowed Wilmington Brookview Secured Claim, which consists of the Secured Claim in the approximate amount of $601,551.51 plus Post-Petition arrearages, if any, held by Wilmington Savings Fund Society, FSB, Not on its Individual Capacity but Solely as Owner Trustee for CSMC 2021-NQM7 [Proof of Claim No. 40] secured by a Lien on 13278 Klondike Rd, Rapid City, SD 57702 ("Brookview Property") which is owned by Brookview Place, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Brookview Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 16 Wilmington Brookview Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Brookview Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Brookview Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 16 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Wilmington Brookview Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 16 Secured Claim described herein, the Debtor shall pay to the holder of the Class 16 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 16 to the extent necessary to achieve a total payout to Class 16 which is equal to the amount of the Class 16 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 16, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 16 Secured Claim described herein, the holder of the Class 16 Wilmington Brookview Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 16 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 16 Secured Claim; and
4. If the Purchase Price exceeds the amount of the Class 16 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 16 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 16 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Wilmington Brookview Closing Amount exceed the Allowed Amount of the Class 16 Secured Claim.

Upon payment to holder of the Class 16 Secured Claim of the Wilmington Brookview Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 16 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Wilmington is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Wilmington. In such circumstance, Wilmington shall apply the Forfeited Deposits to reduce the Class 16 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 16 Claim is Impaired. Accordingly, the holder of the Allowed Wilmington Brookview Secured Claim is entitled to vote to accept or reject the Plan.

**5.17. Claim No. 17. Allowed Citibank, N.A. POC 42 Claim.**

(a) Description. Class 17 consists of the Allowed Citibank, N.A. POC 42 Secured Claim, which consists of the Secured Claim in the approximate amount of $277,598.98 plus Post-Petition arrearages, if any, held by CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF COLT 2022-5 TRUST [Proof of Claim No. 42 secured by a Lien on 1329 9TH ST, RAPID CITY, SD 57701 ("Blackhills Property") which is owned by Black Hills on Ninth, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Black Hills Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 17 Citibank, N.A. POC 42 Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Blackhills Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Blackhills Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 17 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Citibank Blackhills Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 17 Secured Claim described herein, the Debtor shall pay to the holder of the Class 17 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 17 to the extent necessary to achieve a total payout to Class 17 which is equal to the amount of the Class 17 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 17, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 17 Secured Claim described herein, the holder of the Class 17 Citibank Blackhills Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 17 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 17 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 17 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 17 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 17 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Citibank Blackhills Closing Amount exceed the Allowed Amount of the Class 17 Secured Claim.

Upon payment to holder of the Class 17 Secured Claim of the Citibank Blackhills Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 17 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) Citibank is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Citibank. In such circumstance, Citibank shall apply the Forfeited Deposits to reduce the Class 17 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 17 Claim is Impaired. Accordingly, the holder of the Allowed Citibank POC 42 Secured Claim is entitled to vote to accept or reject the Plan.

**5.18. Class 18. Allowed AmeriCedit Secured Claim**

(a) Description. Class 18 consists of the Allowed Secured Claim of AmeriCredit Financial Services, Inc. dba GM Finance relating to a GMC Yukon XL. AmeriCredit filed Proof of Claim No. 2 in the amount of $19,816.05 and indicated the fixed annual interest rate as 3.29%. The basis for perfection according to the Proof of Claim is a Contract and/or Certificate of Title.

(b) Treatment. AmeriCredit's Claim against the Debtor shall be allowed in the amount of $19,816.05 less payments received during the bankruptcy (the "Secured Class 18 Amount"). The Class 18 Claimholder shall be paid the Secured Class 18 Amount over the balance of the Retail Installment Contract period which is scheduled to close in January of 2027 at the annual fixed interest rate of 3.29%, for a monthly payment of $1,074.35 commencing on the Effective Date.

(c) Impairment. The Class 18 Claim is Impaired. Accordingly, each holder of an Allowed Unsecured Priority Claim is not entitled to vote and is deemed to have accepted the Plan.

**5.19.<u>Class 19.</u> <u>Allowed Honda Secured Claim</u>**

(a) <u>Description.</u> Class 19 Claim consists of the Allowed Secured Claim of Honda relating to a 2020 Honda Odyssey. Honda filed a Proof of Claim No. 1 in the amount of $4,779.10 and indicated the fixed annual interest rate as .9%. The basis for perfection according to the Proof of Claim is a Contract and/or Certificate of Title.

(b) <u>Treatment</u>. Honda's Claim against the Debtor shall be allowed in the amount of $4,779.10 less payments made during the course of the bankruptcy case (the "Secured Class 19 Amount"). The Class 19 Claimholder shall be paid the Secured Class 19 Amount consistent with the 1-1 Retail Installment Contract at the annual fixed interest rate of .9% for a monthly payment of $799.00 commencing on the Effective Date.

(c) <u>Impairment</u>. The Class 19 Claim is Impaired. Accordingly, the holder of the Allowed Honda Secured Claim is entitled to vote to accept or reject the Plan.

**5.20. <u>Class 20.</u> <u>Allowed Truist Secured Claim</u>**

(d) <u>Description.</u> Class 20 Claim consists of the Allowed Secured Claim of Honda relating to a 2022 Chrysler Pacifica. Truist filed a Proof of Claim No. 32 in the amount of $42,348.77 and indicated the fixed annual interest rate as 6.54. The basis for perfection according to the Proof of Claim is a Contract and/or Certificate of Title.

(e) <u>Treatment</u>. Truist Claim against the Debtor shall be allowed in the amount of $42,348.77 less payments made during the course of the bankruptcy case (the "Secured Class 19 Amount"). The Class 20 Claimholder shall be paid the Secured Class 20 Amount consistent with the 32-1 Retail Installment Contract at the annual fixed interest rate of 6.54% for a monthly payment of $1083.94 commencing on the Effective Date.

(f) <u>Impairment</u>. The Class 20 Claim is Impaired. Accordingly, the holder of the Allowed Truist Secured Claim is entitled to vote to accept or reject the Plan.

**5.21.<u>Class 21.</u> <u>Allowed Valley National Bank Homestead Claim</u>**

(a) <u>Description.</u> Class 21 consists of the Allowed Valley National Bank Claim, which consists of the Claim in the amount of $324,919 held by Valley National Bank [Proof of Claim No. 20]. This claim is a HELOC secured by the Debtor's homestead property 3631 Estate Oak Cir, Ft Lauderdale FL 33312.

(b) <u>Treatment</u>. The HELOC will be modified to provide for a 30 year repayment at a 4% interest rate amortized with monthly payments of $1,551.21 for 360 payments with no prepayment penalty. The payments shall commence 60 days after the Effective Date and continue on the 1st of the month thereafter with Valley National Bank retaining their lien on 3631 Estate Oak Cir, Ft Lauderdale FL 33312 until paid as provided for in the Plan.

(c) Impairment. The Class 21 Claim is Impaired. Accordingly, the holder of the Allowed Valley National Bank Homestead Claim is entitled to vote to accept or reject the Plan.

**5.22.Class 22. Allowed Secured Claim of Valley National Bank Melbourne**

(a) Description. Class 22 consists of the Allowed Valley National Bank Melbourne Claim, which consists of the Claim in the amount of $943,094.73 held by Valley National Bank [Proof of Claim No. 19]. This claim is a HELOC secured by Bayit en La Playa, LLC's property located at 8875 Highway A1A, Melbourne Beach, FL (the "Bayit en La Playa Property").

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Bayit Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 22 Valley National Bank Melbourne Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Bayit Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Bayit Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 22 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " Valley National Bank Melbourne Secured Closing Amount Amount"):

If the Purchase Price is less than the full amount of the Class 22 Secured Claim described herein, the Debtor shall pay to the holder of the Class 22 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 22 to the extent necessary to achieve a total payout to Class 22 which is equal to the amount of the Class 22 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 22, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 22 Secured Claim described herein, the holder of the Class 22 Valley National Bank Melbourne Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap

Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

If the Purchase Price is equal to the amount of the Class 22 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 22 Secured Claim; and

If the Purchase Price exceeds the amount of the Class 22 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 22 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 22 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the U.S. Bank Closing Amount exceed the Allowed Amount of the Class 22 Secured Claim.

Upon payment to holder of the Class 22 Secured Claim of the Valley National Bank Melbourne Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 22 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) U.S. Bank is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to Valley National Bank Melbourne. In such circumstance, U.S. Bank shall apply the Forfeited Deposits to reduce the Class 22 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 22 Claim is Impaired. Accordingly, the holder of the Allowed Secured Claim of Valley National Bank Melbourne is entitled to vote to accept or reject the Plan.

**5.23.Class 23. Allowed Secured Claim of Greystone**

(a) Description. Class 23 consists of the Allowed Greystone Claim reflected in [Proof of Claim 26] in the amount of $3,919,692.27 filed by Greystone SSG 3 LLC. The claim is secured by the equity interest in Tzadik Mount Rushmore Hotel LLC and Tzadik Hidden Hills Apartments LLC.

(b) Treatment. The Class 23 claim will be paid in full through the distribution of funds from the Corporate Debtors which otherwise would have been paid to the Hendry estate from the Tzadik Hills distribution in full satisfaction of its claim. To the extent Class 23 is not paid in full, then it will be treated as a Class 39 unsecured claim.

(c) Impairment. The Class 23 Claim is Impaired. Accordingly, the holder of the Allowed Secured Claim of Greystone is entitled to vote to accept or reject the Plan.

**5.24. Class 24. Allowed FIB Mountain Claim.**

(a) Description. Class 24 consists of the Allowed FIB Mountain Secured Claim, which consists of the Secured Claim in the approximate amount of $790,342.00 plus Post-Petition

arrearages, if any, held by First Interstate Bank secured by a Lien on 2 Neptune Drive, RAPID CITY, SD ("Mountain View Property") which is owned by Mountain View Estates, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Mountain View Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 24 Allowed FIB Mountain Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Mountain View Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Mountain View Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 24 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "FIB Mountain Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 24 Secured Claim described herein, the Debtor shall pay to the holder of the Class 24 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 24 to the extent necessary to achieve a total payout to Class 24 which is equal to the amount of the Class 24 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 24, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 24 Secured Claim described herein, the holder of the Class 24 FIB Mountain_Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 24 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 24 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 24 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 24 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 24 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the FIB Mountain Closing Amount exceed the Allowed Amount of the Class 24 Secured Claim.

Upon payment to holder of the Class 24 Secured Claim of the FIB Mountain Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 24 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 24 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 24 Claim is Impaired. Accordingly, the holder of the Allowed FIB Mountain Secured Claim is entitled to vote to accept or reject the Plan.

**5.25. Class 25. Allowed FIB Oxford Claim.**

(a) Description. Class 25 consists of the Allowed FIB Oxford Secured Claim, which consists of the Secured Claim in the approximate amount of $826,039.00 plus Post-Petition arrearages, if any, held by First Interstate Bank secured by a Lien on 225 E Watertown St, RAPID CITY, SD ("Oxford Property") which is owned by Oxford Apartments, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Oxford Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 25 Allowed FIB Oxford Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Oxford Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Oxford Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 25 Secured Claim shall receive, in full and final

satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "FIB Oxford Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 25 Secured Claim described herein, the Debtor shall pay to the holder of the Class 25 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 25 to the extent necessary to achieve a total payout to Class 25 which is equal to the amount of the Class 25 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 25, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 25 Secured Claim described herein, the holder of the Class 25 FIB Oxford Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 25 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 25 Secured Claim; and
4. If the Purchase Price exceeds the amount of the Class 25 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 25 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 25 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the FIB Oxford Closing Amount exceed the Allowed Amount of the Class 25 Secured Claim.

Upon payment to holder of the Class 25 Secured Claim of the FIB Oxford Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 25 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 25 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 25 Claim is Impaired. Accordingly, the holder of the Allowed FIB Oxford Secured Claim is entitled to vote to accept or reject the Plan.

**5.26. Class 26. Allowed FIB Horizon Claim.**

(a) Description. Class 26 consists of the Allowed FIB Horizon Secured Claim, which consists of the Secured Claim in the approximate amount of $1,401,072.00 plus Post-Petition arrearages, if any, held by First Interstate Bank secured by a Lien on 1013 N Lacrosse St, RAPID CITY, SD ("Horizon Property") which is owned by Horizon Apartments, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Horizon Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 26 Allowed FIB Horizon Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Horizon Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Horizon Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 26 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "FIB Horizon Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 26 Secured Claim described herein, the Debtor shall pay to the holder of the Class 26 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 26 to the extent necessary to achieve a total payout to Class 26 which is equal to the amount of the Class 26 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 26, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 26 Secured Claim described herein, the holder of the Class 26 FIB Horizon Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim").

In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 26 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 26 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 26 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 26 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 26 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the FIB Horizon Closing Amount exceed the Allowed Amount of the Class 26 Secured Claim.

Upon payment to holder of the Class 26 Secured Claim of the FIB Horizon Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 26 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 26 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 26 Claim is Impaired. Accordingly, the holder of the Allowed FIB Horizon Secured Claim is entitled to vote to accept or reject the Plan.

**5.27. Class 27. Allowed DW Villard Claim.**

(a) Description. Class 27 consists of the Allowed DW Villard Secured Claim, which consists of the Secured Claim in the approximate amount of $1,378,016.00 plus Post-Petition arrearages, if any, held by Dakota West CU secured by a Lien on 1022 W Villard St, Dickinson, ND ("Villard Property") which is owned by Tzadik Blue Hawk, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Villard Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 27 Allowed DW Villard

Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Villard Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Villard Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 27 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "DW Villard Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 27 Secured Claim described herein, the Debtor shall pay to the holder of the Class 27 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 27 to the extent necessary to achieve a total payout to Class 27 which is equal to the amount of the Class 27 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 27, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 27 Secured Claim described herein, the holder of the Class 27 DW Villard Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 27 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 27 Secured Claim; and
4. If the Purchase Price exceeds the amount of the Class 27 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 27 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 27 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the DW Villard Closing Amount exceed the Allowed Amount of the Class 27 Secured Claim.

Upon payment to holder of the Class 27 Secured Claim of the DW Villard Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 27 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up

Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 27 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 27 Claim is Impaired. Accordingly, the holder of the Allowed DW Villard Secured Claim is entitled to vote to accept or reject the Plan.

**5.28. Class 28. Allowed DW Energy Portfolio Claim.**

(a) Description. Class 28 consists of the Allowed DW Energy Portfolio Secured Claim, which consists of the Secured Claim in the approximate amount of $2,958,740.00 plus Post-Petition arrearages, if any, held by Dakota West CU secured by a Lien on Multiple, Dickinson, ND ("Energy Portfolio Property") which is owned by Tzadik Energy Portfolio, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Energy Portfolio Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 28 Allowed DW Energy Portfolio Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Energy Portfolio Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Energy Portfolio Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 28 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "DW Energy Portfolio Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 28 Secured Claim described herein, the Debtor shall pay to the holder of the Class 28 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 28 to the extent necessary to achieve a total payout to Class 28 which is equal to the amount of the Class 28 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 28, a portion

of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 28 Secured Claim described herein, the holder of the Class 28 DW Energy Portfolio Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 28 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 28 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 28 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 28 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 28 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the DW Energy Portfolio Closing Amount exceed the Allowed Amount of the Class 28 Secured Claim.

Upon payment to holder of the Class 28 Secured Claim of the DW Energy Portfolio Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 28 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 28 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 28 Claim is Impaired. Accordingly, the holder of the Allowed DW Energy Portfolio Secured Claim is entitled to vote to accept or reject the Plan.

**5.29. Class 29. Allowed FB&T South Cliff Claim.**

(a) Description. Class 29 consists of the Allowed FB&T South Cliff Secured Claim, which consists of the Secured Claim in the approximate amount of $831,583.00 plus Post-Petition arrearages, if any, held by First Bank & Trust secured by a Lien on 600 S Cliff Ave, Sioux Falls, SD ("South Cliff Property") which is owned by Tzadik South Cliff, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with

any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the South Cliff Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 29 Allowed FB&T South Cliff Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the South Cliff Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the South Cliff Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 29 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " FB&T South Cliff Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 29 Secured Claim described herein, the Debtor shall pay to the holder of the Class 29 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 29 to the extent necessary to achieve a total payout to Class 29 which is equal to the amount of the Class 29 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 29, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 29 Secured Claim described herein, the holder of the Class 29 FB&T South Cliff Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 29 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 29 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 29 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 29 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the

Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 29 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the FB&T South Cliff Closing Amount exceed the Allowed Amount of the Class 29 Secured Claim.

Upon payment to holder of the Class 29 Secured Claim of the FB&T South Cliff Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 29 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 29 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 29 Claim is Impaired. Accordingly, the holder of the Allowed FB&T South Cliff Secured Claim is entitled to vote to accept or reject the Plan.

**5.30. Class 30. Allowed FIB Dakota Flats Claim.**

(a) Description. Class 30 consists of the Allowed FIB Dakota Flats Secured Claim, which consists of the Secured Claim in the approximate amount of $553,453 plus Post-Petition arrearages, if any, held by First Interstate Bank secured by a Lien on 210 St. Joseph St, RAPID CITY, SD ("Dakota Flats Property") which is owned by Dakota Flats, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Dakota Flats Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 30 Allowed FIB Dakota Flats Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Dakota Flats Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Dakota Flats Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 30 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds

from the Sale in the following amounts (collectively, the "FIB Dakota Flats Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 30 Secured Claim described herein, the Debtor shall pay to the holder of the Class 30 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the “Forfeited Deposits”), in which case the Forfeited Deposits shall also be paid to Class 30 to the extent necessary to achieve a total payout to Class 30 which is equal to the amount of the Class 30 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 30, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 30 Secured Claim described herein, the holder of the Class 30 FIB Dakota Flats Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the “Deficiency Claim”). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 30 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 30 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 30 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 30 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 30 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the FIB Dakota Flats Closing Amount exceed the Allowed Amount of the Class 30 Secured Claim.

Upon payment to holder of the Class 30 Secured Claim of the FIB Dakota Flats Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 30 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 30 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 30 Claim is Impaired. Accordingly, the holder of the Allowed FIB Dakota Flats Secured Claim is entitled to vote to accept or reject the Plan.

**5.31. Class 31. Allowed FIB Terry Peak Claim.**

(a) Description. Class 31 consists of the Allowed FIB Terry Peak Secured Claim, which consists of the Secured Claim in the approximate amount of $6,295,303.00 plus Post-Petition arrearages, if any, held by First Interstate Bank secured by a Lien on 21150 Stewart Slope Rd, RAPID CITY, SD ("Terry Peak Property") which is owned by Chalets at Terry Peak, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Terry Peak Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 31 Allowed FIB Terry Peak Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Terry Peak Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Terry Peak Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 31 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "FIB Terry Peak Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 31 Secured Claim described herein, the Debtor shall pay to the holder of the Class 31 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 31 to the extent necessary to achieve a total payout to Class 31 which is equal to the amount of the Class 31 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 31, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 31 Secured Claim described herein, the holder of the Class 31 FIB Terry Peak Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 31 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 31 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 31 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 31 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 31 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the FIB Terry Peak Closing Amount exceed the Allowed Amount of the Class 31 Secured Claim.

Upon payment to holder of the Class 31 Secured Claim of the FIB Terry Peak Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 31 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 31 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 31 Claim is Impaired. Accordingly, the holder of the Allowed FIB Terry Peak Secured Claim is entitled to vote to accept or reject the Plan.

**5.32. Class 32. Allowed BW Rushmore Claim.**

(a) Description. Class 32 consists of the Allowed BW Rushmore Secured Claim, which consists of the Secured Claim in the approximate amount of $20,089,227.00 plus Post-Petition arrearages, if any, held by BankWest secured by a Lien on 445 Mt Rushmore Rd, RAPID CITY, SD ("Rushmore Property") which is owned by Tzadik Mount Rushmore, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Rushmore Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 32 Allowed BW Rushmore Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Rushmore Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Rushmore Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 32 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " BW Rushmore Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 32 Secured Claim described herein, the Debtor shall pay to the holder of the Class 32 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 32 to the extent necessary to achieve a total payout to Class 32 which is equal to the amount of the Class 32 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 32, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 32 Secured Claim described herein, the holder of the Class 32 BW Rushmore Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 32 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 32 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 32 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 32 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 32 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the BW Rushmore Closing Amount exceed the Allowed Amount of the Class 32 Secured Claim.

Upon payment to holder of the Class 32 Secured Claim of the BW Rushmore Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 32 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 32 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 32 Claim is Impaired. Accordingly, the holder of the Allowed BW Rushmore Secured Claim is entitled to vote to accept or reject the Plan.

**5.33. Class 33. Allowed Caledonia Claim.**

(a) Description. Class 33 consists of the Allowed Caledonia Secured Claim, which consists of the Secured Claim in the approximate amount of $0 plus Post-Petition arrearages, if any, held by N/A secured by a Lien on 744 Prospect Ave, Unit 107, Lead, SD ("Caledonia Property") which is owned by Caledonia Place, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Caledonia Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 33 Allowed Caledonia Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Caledonia Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Caledonia Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 33 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "Caledonia Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 33 Secured Claim described herein, the Debtor shall pay to the holder of the Class 33

Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 33 to the extent necessary to achieve a total payout to Class 33 which is equal to the amount of the Class 33 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 33, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 33 Secured Claim described herein, the holder of the Class 33 Caledonia Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 33 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 33 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 33 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 33 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 33 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Caledonia Closing Amount exceed the Allowed Amount of the Class 33 Secured Claim.

Upon payment to holder of the Class 33 Secured Claim of the Caledonia Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 33 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 33 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 33 Claim is Impaired. Accordingly, the holder of the Allowed Caledonia Secured Claim is entitled to vote to accept or reject the Plan.

**5.34. Class 34. Allowed SF Brookview Claim.**

(a) Description. Class 34 consists of the Allowed SF Brookview Secured Claim, which consists of the Secured Claim in the approximate amount of $586,090.00 plus Post-Petition

arrearages, if any, held by Selene Finance secured by a Lien on 13278 Klondike Rd, Rapid City, SD ("Brookview Property") which is owned by Brookview Place, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Brookview Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 34 Allowed SF Brookview Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Brookview Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Brookview Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 34 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " SF Brookview Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 34 Secured Claim described herein, the Debtor shall pay to the holder of the Class 34 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 34 to the extent necessary to achieve a total payout to Class 34 which is equal to the amount of the Class 34 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 34, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 34 Secured Claim described herein, the holder of the Class 34 SF Brookview Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 34 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 34 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 34 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 34 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 34 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the SF Brookview Closing Amount exceed the Allowed Amount of the Class 34 Secured Claim.

Upon payment to holder of the Class 34 Secured Claim of the SF Brookview Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 34 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 34 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 34 Claim is Impaired. Accordingly, the holder of the Allowed SF Brookview Secured Claim is entitled to vote to accept or reject the Plan.

**5.35. Class 35. Allowed Ridge View Claim.**

(a) Description. Class 35 consists of the Allowed Ridge View Secured Claim, which consists of the Secured Claim in the approximate amount of $0 plus Post-Petition arrearages, if any, secured by a Lien on 617 Ridge Rd, Lead, SD ("Ridge View Property") which is owned by Ridge View Estates, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Ridge View Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 35 Allowed Ridge View Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Ridge View Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Ridge View Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 35 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " Ridge View Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 35 Secured Claim described herein, the Debtor shall pay to the holder of the Class 35 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 35 to the extent necessary to achieve a total payout to Class 35 which is equal to the amount of the Class 35 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 35, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 35 Secured Claim described herein, the holder of the Class 35 Ridge View Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 35 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 35 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 35 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 35 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 35 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the Ridge View Closing Amount exceed the Allowed Amount of the Class 35 Secured Claim.

Upon payment to holder of the Class 35 Secured Claim of the Ridge View Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 35 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up

Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 35 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 35 Claim is Impaired. Accordingly, the holder of the Allowed Ridge View Secured Claim is entitled to vote to accept or reject the Plan.

**5.36. Class 36. Allowed SPS Teton Claim.**

(a) Description. Class 36 consists of the Allowed SPS Teton Secured Claim, which consists of the Secured Claim in the approximate amount of $399,764.00 plus Post-Petition arrearages, if any, held by Select Portfolio Service secured by a Lien on 25110 Little Teton Rd, Custer, SD ("Teton Property") which is owned by Teton Cabin, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Teton Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 36 Allowed SPS Teton Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Teton Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Teton Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 36 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the " SPS Teton Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 36 Secured Claim described herein, the Debtor shall pay to the holder of the Class 36 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 36 to the extent necessary to achieve a total payout to Class 36 which is equal to the amount of the Class 36 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 36, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the

Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan).

2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 36 Secured Claim described herein, the holder of the Class 36 SPS Teton Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;

3. If the Purchase Price is equal to the amount of the Class 36 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 36 Secured Claim; and

4. If the Purchase Price exceeds the amount of the Class 36 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 36 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 36 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the SPS Teton Closing Amount exceed the Allowed Amount of the Class 36 Secured Claim.

Upon payment to holder of the Class 36 Secured Claim of the SPS Teton Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 36 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 36 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 36 Claim is Impaired. Accordingly, the holder of the Allowed SPS Teton Secured Claim is entitled to vote to accept or reject the Plan.

**5.37. Class 37. Allowed SF Larkspur Claim.**

(a) Description. Class 37 consists of the Allowed SF Larkspur Secured Claim, which consists of the Secured Claim in the approximate amount of $566,892.00 plus Post-Petition arrearages, if any, held by Selene Finance secured by a Lien on 20768 Larkspur Rd, Sturgis, SD ("Larkspur Property") which is owned by Larkspur Hills, LLC.

(b) Treatment. To the extent Class 2 has been paid in full, the Debtor shall have three hundred and sixty-five (365) days after the Effective Date to pay the outstanding interest on the claim to reinstate the mortgage and promissory note and to resume ordinary P&I payments with any months previously unpaid added to the end of the applicable promissory note and mortgage ("Reinstatement Interest Payment"). If the foregoing Reinstatement Interest Payment is made, then the debtor is not required to sell as set forth below. If the Debtor has not made the Reinstatement Interest Payment, then sale goes below.

In the event that the Debtor obtains a binding contract for sale of the Larkspur Property via a private transaction on or before the expiration of one (1) year following the Effective Date, consistent with Section 2.04(a)(ii) of the Plan, the holder of the Class 37 Allowed SF Larkspur Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Larkspur Property via a private transaction on or before the expiration of one (1) year following the Effective Date, the Larkspur Property shall be sold via the public Auction and Sale process described in Section 2.04(b) of the Plan. In the event that a Sale closes with the Successful Bidder or a Back-Up Bidder, then the holder of the Class 37 Secured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, proceeds from the Sale in the following amounts (collectively, the "SF Larkspur Secured Closing Amount Amount"):

1. If the Purchase Price is less than the full amount of the Class 37 Secured Claim described herein, the Debtor shall pay to the holder of the Class 37 Secured Claim the Purchase Price plus any Forfeited Successful Bidder Deposit and/or any Forfeited Back-Up Bidder Deposits (collectively, the "Forfeited Deposits"), in which case the Forfeited Deposits shall also be paid to Class 37 to the extent necessary to achieve a total payout to Class 37 which is equal to the amount of the Class 37 Secured Claim described herein (the "Gap Payment Amount") (in the event that, after of the Gap Payment Amount to Class 37, a portion of the Forfeited Deposits remains (the "Remaining Forfeited Deposit Amount"), the Remaining Forfeited Deposit Amount shall be treated as set forth below in Section 2.04(b)(3) of the Plan.
2. If the Purchase Price plus the Forfeited Deposits, if any, is less than the full amount of the Class 37 Secured Claim described herein, the holder of the Class 37 SF Larkspur Secured Claim shall be entitled to a deficiency claim in an amount equal to the Gap Payment Amount (the "Deficiency Claim"). In such an instance, the Deficiency Claim shall be treated as a General Unsecured Claim of the Plan;
3. If the Purchase Price is equal to the amount of the Class 37 Secured Claim described herein, the Debtor shall pay the Purchase Price to the holder of Class 37 Secured Claim; and
4. If the Purchase Price exceeds the amount of the Class 37 Secured Claim described herein: (a) the Debtor shall pay to the holder of the Class 37 Secured Claim the full amount of said Claim from the Purchase Price; and (b) the Debtor shall be entitled to retain the balance of the Sale proceeds exceeding the full amount of the Class 37 Secured Claim (the "Excess Proceeds"). To avoid any doubt, under no circumstances shall the SF Larkspur Closing Amount exceed the Allowed Amount of the Class 37 Secured Claim.

Upon payment to holder of the Class 37 Secured Claim of the SF Larkspur Sale Closing Amount, any and all guaranty claims arising from or relating to the Class 37 Claim shall be deemed satisfied, settled, released, extinguished and discharged.

However, in the event that (1) the Sale does not close with the Successful Bidder or a Back-Up Bidder as purchaser and (2) FIB is not deemed to be the Successful Bidder or a Back-Up Bidder, then the Forfeited Deposits, if any, shall be paid to FIB. In such circumstance, FIB shall apply the Forfeited Deposits to reduce the Class 37 Allowed Secured Claim with the balance treated as a general unsecured claim.

(c) Impairment. The Class 37 Claim is Impaired. Accordingly, the holder of the Allowed SF Larkspur Secured Claim is entitled to vote to accept or reject the Plan.

**5.38. Class 38. Allowed Unsecured Priority Claims**

(a) Description. Class 38 consists of the Allowed Unsecured Priority Claims, if any, given priority under section 507(a) of the Code. The Debtor estimates that Class 38 will consist of the Priority Claim in the amount of $410,218.53 held by the Internal Revenue Service [Proof of Claim No. 5] and the South Dakota Department of Revenue [Proof of Claim No. 39] in the amount of $791,856.00 less payments to either that have occurred during the bankruptcy case.

(b) Treatment. On the Effective Date, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, each holder of an Allowed Unsecured Priority Claim shall receive payment of one hundred percent (100%) of the Allowed Amount of such Claim in Cash as follows: Commencing on 1st day of the 1st month following the Effective Date, the Debtor shall make equal monthly payments for a period of sixty months (60) months. For example, pursuant to the treatment provided herein, to the extent allowed the Internal Revenue Service will receive payment of $6,836.97 per month for 60 months and the South Dakota Department of Revenue will receive payment of $13,197.60 per month for 60 months. The Debtor is entitled to prepay without penalty.

(c) Impairment. The Class 24 Claims are Impaired. Accordingly, each holder of an Allowed Unsecured Priority Claim is entitled to vote to accept or reject the Plan.

**5.39. Class 39. Allowed General Unsecured Claims**

(a) Description. Class 39 consists of the Allowed General Unsecured Claims. The majority of which is held by the deficiency claim(s) of the holders of the foregoing Allowed Claims and other general unsecured creditors who filed proofs of claim.

(b) Treatment. On or before the Effective Date of the Plan, the Debtor shall remit fifteen thousand dollars ($15,000.00) to his general bankruptcy counsel, BMUZ, who shall hold said $15,000 in escrow. Except to the extent that the holder of an Allowed General Unsecured Claim within Class 39 has been paid prior to the Effective Date or agrees to a different treatment, on or before the earlier thirty (30) days following the determination of the allowed deficiency amount of Fannie Mae and Merchants, if any, each holder of an Allowed General Unsecured Claim, including any deficiency claim(s) shall receive a Pro Rata distribution of the fifteen thousand dollars ($25,000.00) held in escrow by BMUZ, in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed General Unsecured Claims. As mentioned above, the Debtor anticipates it will not have any Deficiency Claim in Class 9. To avoid any confusion, BMUZ will not make any Pro Rata distributions contemplated herein until

both the Cheyenne River Ranch Property and/or the Single Family Homes are successfully liquidated and deficiency claims, if any, are determined.

(c) Impairment. The Class 39 Claims are Impaired. Accordingly, each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

**5.40. Class 40. Allowed Equity Interest/Revesting of Personal Property in Reorganized Debtor**

(a) Description. Class 40 consists of Allowed Equity Interests. Equity Interests consist of the revesting of the Debtor's personal property in the Reorganized Debtor.

(b) Treatment. Except as otherwise provided in the Plan and/or the Confirmation Order, and in exchange for the $15,000.00 payment to the Class 26 Allowed General Unsecured Claims, on the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

(c) Impairment. The Class 40 Equity Interests are Impaired and entitled to vote.

## ARTICLE VI

## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS

**6.01. Solicitation of Votes**

Classes 1-40 are Impaired. In accordance with sections 1126 and 1129 of the Code, each holder of an Allowed Claim (*i.e.*, not a Disputed Claim) in Classes 1-40 are entitled to vote to accept or reject the Plan. Any holder of a Disputed Claim is not entitled to vote on the Plan unless its Claim is estimated by the Court.

An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Code or any insider. An Impaired Class of Equity Interests will have accepted the Plan if the holders of at least two-thirds in amount of the Allowed Equity Interests actually voting in the Class have voted to accept the Plan, and not counting the vote of any holder designated under section 1126(e) of the Code. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code. ***Holders of Claims valued at an unknown amount, and holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.***

**6.02. <u>Voting of Claims</u>**

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court. ***Holders of Claims valued at an unknown amount, and holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.***

**6.03. <u>Method of Distribution Under the Plan</u>**

(a) Subject to Rule 9010, and except as otherwise provided in Section 6.04 of the Plan, all distributions under the Plan shall be made by the Debtor to the holder of each Allowed Claim, in the manner provided for in the Plan, at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Confirmation Date, or other date as ordered by the Court, unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b) Any payment of Cash made by the Debtor or the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c) Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Debtor to any holder of a Claim unless a request therefore is made in writing to the Debtor, or unless the Distribution is a final Distribution.

(e) When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in this section of the Plan.

(f) In the event that any Distribution to any holder is returned as undeliverable, the Debtor shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under section 347(b) of the Code at the expiration of six (6) months from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred and such funds will revest in the Debtor.

(g) Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

(h) At the close of business on the Confirmation Date, or other date ordered by the Court, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the Confirmation Date, or other date ordered by the Court; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Confirmation Date, or other date ordered by the Court, and prior to the Effective Date. The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Confirmation Date, or other date ordered by the Court.

**6.04. Distributions Withheld for Disputed Claims**

**(a) Establishment and Maintenance of Reserve**

On the initial distribution date and each subsequent distribution date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to one hundred percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtor or the Court in accordance with Section 6.08 of the Plan (the "Disputed Claims Reserve").

**(b) Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtor for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtor.

**(c) Distributions Upon Allowance of Disputed Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

**(d) No Surplus Distributions to Holders of Allowed Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtor.

**(e) Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtor.

**6.05. Procedures for Allowance or Disallowance of Disputed Claims**

**(a) Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

Unless otherwise ordered by the Court, for voting purposes any and all objections to any claim must be filed within fourteen (14) days prior to Confirmation (the "Objection Deadline"), or with respect to rejection claims, within thirty (30) days of their filing (the "Objection to Rejection Claims Deadline"). Subject to applicable law, from and after the Effective Date, the Debtor or the Reorganized Debtor will have the exclusive authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Code, the Rules and the Plan. Any and all objections to any claim must be filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline. An Objection to the allowance of a Claim will be in writing and may be filed with the Court by the Debtor, at any time on or before the Claim Objection Deadline. The failure by Debtor to object to any Claim for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part.

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtor or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court. The Debtor or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Reorganized Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

In the event that the Debtor settles any claim objection, the Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtor and the holder of the Disputed Claim. In the event that the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtor will set the contested matter for hearing before the Court and will provide all interested parties with notice of the date set.

**(b) No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim (in whole or in part).

**(c) Disallowed Claims**

All Claims held by Persons against whom the Debtor has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

**6.06. Disbursing Agent**

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims, and will make all Distributions required to be distributed under the applicable provisions of the Plan. Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan. Each Disbursing Agent will serve without bond, and each Disbursing Agent, other than the Reorganized Debtor, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor.

**6.07. Setoffs and Recoupment**

The Debtor may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right they may have against the holder of such Claim.

**6.08. Estimations of Claims**

For purposes of calculating and making Distributions under the Plan, the Debtor or the Reorganized Debtor, as applicable, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtor, Reorganized Debtor and holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of

the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**6.09. <u>No Recourse</u>**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor, the Reorganized Debtor, or any of their respective professionals, consultants, officers, or directors or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**6.10. <u>Amendments to Claims</u>**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

**6.11. <u>Post-Petition Interest on Claims</u>**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

**6.12. <u>Unclaimed Funds</u>**

Any funds unclaimed for the period described in paragraph 6.03(f) above shall be forfeited by the holder and will revest in the Reorganized Debtor.

Additionally, if any distribution to a holder of an Allowed Claim remains unclaimed for a period of six months after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder. A distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the schedules or in a proof of

Claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01. Assumption or Rejection of Executory Contracts and Unexpired Leases

**(a) Executory Contracts and Unexpired Leases**

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

The Debtor identified no executory contracts or unexpired leases in the Schedules. Accordingly, pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person, if any, shall be deemed rejected by the Reorganized Debtor as of the Effective Date.

The Debtor's insurance policies, if any, and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall not be treated as executory contracts under the Plan. The Debtor and any Person or party to said insurance policies and any agreements, documents or instruments relating thereto shall be governed by same. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

### 7.02. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtor or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after notice of entry of the Confirmation Order. Any Claim not filed within such time will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor and its property. Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION

### 8.01. General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

**8.02.The Reorganized Debtor**

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

**8.03.Effectiveness of Instruments and Agreements**

On the Effective Date, all documents described in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

**8.04.Approval of Agreements**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**8.05.Administration After the Effective Date**

After the Effective Date, the Reorganized Debtor may use, acquire, and dispose of his property, free of any restrictions of the Code and Rules.

**8.06.Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the completion of the plan payments.

**8.07.Revesting of Assets**

Pursuant to section 1141 of the Code, the Property of the Estate of the Debtor, including without limitation the Actions, shall revest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims, except as otherwise provided in the Plan or the Confirmation Order.

**8.08. <u>Causes of Action</u>**

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtor and Debtor in Possession, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Debtor and/or the Disbursing Agent, as the case may be, shall have the authority to commence and prosecute such Actions for the benefit of the Estate. Specifically, the Debtor shall continue to prosecute any Action pending on the Effective Date.

Further, section 547 of the Code enables a debtor in possession to avoid transfers to a creditor, based upon an antecedent debt, made within ninety (90) days of the petition date, which enables the creditor to receive more than it would under a liquidation. Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value. The Debtor or Disbursing Agent, as the case may be, will analyze payments made by the Debtor to creditors within ninety (90) days (or in the case of insiders, one year) before the Commencement Date (as set forth in item 3(a) in the Debtor's Statement of Financial Affairs) to determine which such payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions.

After the Effective Date, the Reorganized Debtor shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court.

In light of the foregoing, the Debtor submits that Confirmation of the Debtor's Plan is in the best interests of the estate and the Debtor's creditors.

## ARTICLE IX

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

**9.01. <u>Conditions Precedent to Confirmation</u>**

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 9.03 of the Plan:

(i) The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor, the Reorganized Debtor, and its respective present and former advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(ii) The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iii) All exhibits to the Plan, including those to be contained in the Plan Supplement, shall be in form and substance reasonably acceptable to the Debtor and approved by the Court;

(iv) The statutory fees owing to the United States Trustee shall have been paid in full; and

(v) All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

**9.02. Effect of Failure of Conditions**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (i) constitute a waiver or release of any Action by, or Claims against, the Debtor or (ii) prejudice in any manner the rights of the Debtor.

**9.03. Waiver of Conditions**

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 9.01 of the Plan. The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## ARTICLE X

## EFFECT OF CONFIRMATION

**10.01. Binding Effect Notices**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**10.02 Discharge of Debtor**

Upon completion of all payments provided under the Plan or after further notice and hearing as proscribed by 11 U.S.C. §1141(d)(5)(B), the Debtor shall be discharged from any debt

that arose before the Effective Date and of any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Code whether or not a Proof of Claim based upon such debt is filed or deemed filed pursuant to section 501 of the Code, such Claim as allowed under Section 502 of the Bankruptcy Code, or the holder of such Claim has accepted the Plan.

**10.03<u>Injunction Related to Discharge</u>**

***Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor or against the property or interests in property of the Debtor, on account of any such Claim, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim. Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.***

**10.04<u>Release by Holders of Impaired Claims.</u>**

***The Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against the Debtor may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019. In consideration of the obligations of the Debtor and the Reorganized Debtor under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 case or the conduct thereof, or the Plan.***

**10.05<u>Injunction Against Interference with the Plan</u>**

***Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity***

***may take in connection with the pursuit of appellate rights. This includes foreclosure proceeding against entities owned by the Debtor.***

**10.06Votes Solicited in Good Faith**

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a) to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b) to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c) to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d) to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, or Claims;

(e) to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g) to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h) to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k) to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l) to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m) to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n) to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p) to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q) to hear any other matter not inconsistent with the Code; and

(r) to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**11.01. Effectuating Documents and Further Transactions.**

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

**11.02. Exemption from Transfer Taxes.**

Pursuant to section 1146(a) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new common stock, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**11.03. Authorization to Request Prompt Tax Determinations.**

The Reorganized Debtor is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

**11.04. Exculpation.**

***Subject to the occurrence of the Effective Date, neither the Debtor nor the Reorganized Debtor, or any of their respective agents, financial advisors, attorneys and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.***

**11.05. Injunction Relating to Exculpation**

***The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtor, the Reorganized Debtor of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.***

**11.06. Post-Effective Date Fees and Expenses**

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without

limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**11.07. Payment of Statutory Fees**

The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

**11.08. Amendment or Modification of Plan**

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims, insofar as it does not materially adversely affect the interests of holders of Claims, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

**11.09. Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.10. <u>Revocation or Withdrawal of the Plan</u>**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**11.11. <u>Binding Effect</u>**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**11.12. <u>Notices</u>**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Notices shall be sent or delivered to the following:

**To the Reorganized Debtor:**

Adam Hendry
3631 Estate Oak Circle
Ft. Lauderdale, FL 33312

**With a copy to:**

Beighley, Myrick, Udell & Zeichman, PA
Attorneys for the Debtor
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Attn: Thomas G. Zeichman, Esq.

**11.13. <u>Governing Law</u>**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.14. <u>Withholding and Reporting Requirements</u>**

In connection with the consummation of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any

federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**11.15. Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**11.16. No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**11.17. Waiver of Bankruptcy Rule 3020(e) and 7062**

The Debtor may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

**11.18. Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

**11.19. Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

**11.20. Inconsistency**

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**11.21. No Interest or Attorneys' Fees**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, an no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

**11.22. Successors and Assigns**

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**11.23. <u>Headings</u>**

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

**11.24. <u>No Penalty for Prepayment</u>**

Neither the Debtor nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under this Plan.

**11.25. <u>Savings Clause</u>**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**11.26. <u>Remedy of Defects</u>**

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

**11.27. <u>Post-Confirmation Date Service List</u>**

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order shall be required to be sent to such Entities.

[*Remainder of Page Intentionally Left Blank*]

**ARTICLE XIII**

**CONCLUSION**

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

**DATED: December 9, 2025**

**DEBTOR-IN-POSSESSION:**

**By: /s/ Adam Hendry________________________**
**Adam Hendry**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those parties as listed on the Court's Case Management / Electronic Case Filing on this December 9, 2025.

**ATTORNEY CERTIFICATION**

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

**BEIGHLEY, MYRICK,**
**UDELL & ZEICHMAN, PA**
*Proposed Counsel for Debtor*
2385 Executive Center Drive, Suite 300
Boca Raton, FL 33431
Phone: 561-549-9036
Fax: 561-491-5509
Primary Email: tzeichman@bmulaw.com
Secondary Email: notice66@bmulaw.com
By: */s/ Thomas G. Zeichman*
THOMAS G. ZEICHMAN
Florida Bar No. 99239